USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/21/2019___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                 :

JOINT STOCK COMPANY "CHANNEL ONE :
RUSSIA WORLDWIDE,"                 :
                                 :
                      Plaintiff,  :
        -against-              :
                                 :
RUSSIAN TV COMPANY, et al.,      :
                                 :
                                 :
                      Defendants. :
------------------------------------------------------------ X

18 Civ. 2318 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Joint Stock Company "Channel One Russia World Wide" ("Channel One") brings this action against Russian TV Company ("Russian TV"), its owner, Steven Rudik and TechStudio, alleging violations of the Federal Communications Act (Counts I–II), the Digital Millennium Copyright Act (the "DMCA") (Counts III–IV), the Lanham Act (Counts V–VI), the Copyright Act (Counts VII–VIII), the New York General Business Law (Count IX) and unfair competition and copyright infringement under New York law (Count X). Defendants move to dismiss Counts IV to VIII and X against Russian TV and to dismiss all claims against Defendants Rudik and TechStudio. Plaintiff opposes Defendants' motion and, in the alternative, seeks leave to amend the Complaint. For the reasons that follow, Defendants' partial motion to dismiss is granted as to Counts IV, V, VI and X and denied as to Count VII and VIII. Defendants' motion to dismiss Rudik and TechStudio is granted. Plaintiff's motion to amend the complaint is denied without prejudice to renewal.

## I.   BACKGROUND

       The facts below are taken from the Complaint and exhibits attached to the Complaint.

*See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016).  The facts alleged in the Complaint are assumed to be true only for purposes of this motion.  *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### A.     The Parties

Plaintiff Channel One produces and broadcasts television channels that enjoy a large audience in the Russian Federation and its neighboring states (the "Programming").   The Programming is first broadcast in the Russian Federation via satellite and "consist[s] mostly of works created in and published in the Russian Federation."  In exchange for a fee, Channel One entered into licensing agreements that granted third parties the "exclusive right to broadcast and re-broadcast [its] Programming and other copyrighted materials in the United States."  Channel One's licensees use Channel One's channel logos ("the Protected Marks") to advertise the Programming in the United States.

Defendant Russian TV is a New York corporation that owns and operates a website through which it provides unauthorized access to the Programming in the United States in exchange for a subscription fee.  The Russian TV website also sells "set-top boxes" ("STBs") that facilitate unauthorized access to the Programming.  Defendant TechStudio, a business with an office in Brooklyn, New York, advertises subscriptions for Russian TV to U.S. consumers.  Defendant Steven Rudik is the owner and operator of Russian TV and TechStudio.

Russian TV's website invites customers to "Watch Russian TV online" and advertises over 200 television channels.  References to the Programming and the Protected Marks do not appear in the Complaint's excerpts of Russian TV's website.  However, when unauthorized users stream the Programming using Russian TV's services, the Protected Marks appear at the corner of the screen.

**B. Theory of Unauthorized Access to the Programming**

Plaintiff's content is first broadcast via satellite signals throughout Russia and its neighboring states. These signals are encrypted to prevent unauthorized access to Plaintiff's Programming. Defendants intercept, copy, retransmit and distribute Plaintiff's Programming. The Complaint offers two alternative theories of how Defendants intercept Plaintiff's content. The first is that Defendants access and decrypt Plaintiff's satellite signal, transform the signal into digital data, transmit the data via the internet to a large online server system called a content delivery network or "CDN." Alternatively, Defendants intercept the already decrypted digital Programming, after Plaintiff has distributed it to a cable operator in Russia or its neighboring states, and then transmit the data to a CDN. Once the data is on a CDN, Defendants' customers use a special browser (which is either on an STB sold by Defendants or downloaded from Russian TV's website) to access the Programming. Defendants' subscription service has resulted in Plaintiff losing "subscriber revenue, market share, and advertising revenues."

## II. STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level.'" *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007)).  On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor."  *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

In considering a motion to dismiss, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citing *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).  The following materials were considered because they are attached to the Complaint: screenshots of Russian TV's website and the TechStudio storefront, pictures of the Programming as it is streamed from Russian TV's website and a screenshot of Rudik's LinkedIn page.  However, the declaration and exhibits filed with Plaintiff's opposition memorandum of law were not considered because they are not integral to the Complaint.  *See J.E. v. Chappaqua Cent. Sch. Dist.*, No. 14 Civ. 3295, 2015 WL 4934535, at *7 (S.D.N.Y. Aug. 17, 2015) (collecting cases) ("Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.").

## III.    DISCUSSION

Defendants' motion to dismiss is granted as to Counts IV, V, VI, and X and as to Defendants Rudik and TechStudio.  As the Complaint sufficiently states a claim for direct and secondary copyright infringement, Counts VII and VIII are not dismissed.

## A.     Defendants TechStudio and Rudik

Defendant TechStudio is dismissed because the Complaint does not plausibly allege that it is an alter ego of Russian TV[1] or that TechStudio is doing business as Russian TV.  Defendant Rudik is dismissed because the Complaint does not plausibly allege that he is liable as the owner of TechStudio.

The Complaint alleges two theories of TechStudio's liability: first, that TechStudio is an alter-ego of Russian TV, and second, that TechStudio is doing business as Russian TV.  The Complaint alleges the following facts regarding TechStudio: that TechStudio and Russian TV share an address; that TechStudio and Russian TV are both owned by Rudik; that a search of "TechStudio" with the New York Department of State revealed no records; and that TechStudio "advertises at its business address subscriptions to Russian TV Company [s]treaming services." A LinkedIn page, filed with the Complaint, states that Rudik is the owner of TechStudio, but the allegation that he also owns Russian TV is completely conclusory and is disregarded.  *See Iqbal*, 556 U.S. at 678.  With respect to the first theory, the Complaint fails to allege facts showing that TechStudio is an alter-ego of Russian TV.  To plead an alter-ego theory of liability under New York law, a complaint is generally required to allege 'complete domination of the corporation in respect to the transaction attacked' and 'that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury.'"  *Baby Phat Holding Co., LLC v. Kellwood Co.*, 997 N.Y.S.2d 67, 70 (1st Dep't 2014) (internal alterations omitted).  Here, the Complaint does not plausibly plead that TechStudio completely dominated Russian TV such that

---

[1] The parties' memoranda of law assume that New York law governs the issue of alter ego liability, and "such implied consent is, of course, sufficient to establish the applicable choice of law."  *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009); *accord Herbert H. Landy Ins. Agency, Inc. v. Navigators Mgmt. Co., Inc.*, No. 14 Civ. 6298 , 2015 WL 170460, at *2 (S.D.N.Y. Jan. 13, 2015).

the actions of one can be attributed to the other. Although the fact that TechStudio allegedly advertises Russian TV services makes it plausible to allege that it sells Russian TV subscriptions, these sales do not make it plausible that TechStudio exercises "complete domination" over Russian TV, or that TechStudio knew it was complicit in committing fraud or wrong against Plaintiff. *See Baby Phat Holding*, 997 N.Y.S.2d at 70. The allegation that Russian TV and TechStudio shared a common address is also insufficient to raise a plausible inference that TechStudio exercised "complete domination" over Russian TV. *See id.*

As to the second theory of TechStudio's liability, the Complaint fails to allege facts sufficient to show that TechStudio is doing business as Russian TV. That TechStudio and Russian TV share a common address and provide the same products is insufficient to raise a plausible inference that TechStudio is doing business as Russian TV. *See Sadowski v. Saluja*, No. 17 Civ. 2832, 2018 WL 4658436, at *3 (E.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, No. 17 Civ. 2832, 2018 WL 4637353 (E.D.N.Y. Sept. 27, 2018) (refusing to hold a defendant liable for copyright infringement under a "d/b/a" theory when the complaint "fail[ed] to explain [defendant's] role with respect to the [infringing] website or otherwise allege any conduct undertaken by [the defendant] that constituted, caused, or otherwise led to the infringement"); *Sunskar Ltd. v. CDII Trading, Inc*., 828 F. Supp. 2d 604, 620 (S.D.N.Y. 2011) (holding evidence that parent and subsidiary "share offices, and some executives" to be insufficient evidence that one was doing business as the other).

The Complaint fails to state a plausible claim against Defendant Rudik as it does not plead any facts regarding Rudik's direct involvement in Russian TV's alleged misconduct. The Complaint attempts to bootstrap Rudik's liability onto allegations of TechStudio's liability. But as discussed above, the allegations against TechStudio are insufficient to sustain a claim.

Consequently, Rudik's liability based on his ownership of TechStudio cannot sustain a claim. As noted above, the allegation that Rudik owns and operates Russian TV is conclusory and therefore disregarded. Defendant Rudik is dismissed.

The Complaint's failure to plead facts sufficient to state a claim against TechStudio and Rudik is not cured by vague references to the actions of "Defendants." Although group pleading is not per se improper, Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8; *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order); *accord Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070, 2017 WL 2684065, at *5 (S.D.N.Y. June 20, 2017).

Apart from the few allegations specific to TechStudio and Rudik discussed above, the other allegations are about "Defendants" under the heading "Allegations Common to All Defendants." The facts in that section "lump all the defendants together . . . and provid[e] no factual basis to distinguish their conduct" when determining their potential liability under each claim in the Complaint. *See Patrico,* 2017 WL 2684065, at *5. This is insufficient under Rule 8. *See id.*; *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 696126, at *7 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted sub nom. Joint Stock Co. v. Infomir LLC*, No. 16 Civ. 1318, 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017).

## B.    Copyright Infringement

Defendants' motion to dismiss the claims for direct copyright infringement (Count VII) and secondary copyright infringement (Count VIII) is denied.

Under the Berne Convention, a treaty to which Russia and the United States are both parties, "an author who is a national of one of the member states of either Berne or the

[Universal Copyright Convention], or one who first publishes his work in any such member state, is entitled to the same copyright protection in each other member state as such other state accords to its own nationals." *Itar-Tass Russian News Agency v. Russian Kurier, Inc*., 153 F.3d 82, 89 (2d Cir. 1998) (citing with approval 1 MELVILLE B. NIMMER, NIMMER ON COPYRIGHT § 17.05 (1998)). Under this principle, Plaintiffs are entitled to the same copyright protections as those granted to United States authors under the Copyright Act.

To bring suit under the Copyright Act, the Complaint must allege statutory standing by pleading that the plaintiff is "[t]he legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501(b); *Itar-Tass*, 153 F.3d at 91–92 ("[A]n owner (including one determined according to foreign law) may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b) . . . which permits suit only by owners of 'an exclusive right under a copyright.'").[2] A claim for copyright infringement must also plead "(1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)) (internal quotations omitted).

---

[2] The requirement of "preregistration or registration of the copyright claim" applies only if the work at issue is a "United States work." *See* 17 U.S.C. § 411(a) (requiring registration to bring an action for copyright infringement in any "United States work"). As the Complaint alleges that the Programming is first made available for distribution in Russia and its neighboring states -- i.e., is first published outside the United States -- the Programming is not a "United States work" and is exempt from the registration requirement. 17 U.S.C. § 101 (defining "United States work"); *see also* NIMMER ON COPYRIGHT § 4.11 (2018) ("[I]t may be said that publication occurs with respect to television distribution when copies are made available for general distribution or syndication to television stations.").

## 1. Statutory Standing and Ownership

The Complaint pleads facts sufficient to show that, under Russian law, Plaintiff owns an exclusive right as is necessary for standing, and owns a valid copyright sufficient to state an infringement claim. *See Itar-Tass,* 153 F.3d at 92.

Russian copyright law governs questions of Plaintiff's ownership of rights to the Programming, including whether Plaintiff owns an exclusive right. With respect to issues of ownership, "the usual rule is that the interests of the parties in property are determined by the law of the state with the most significant relationship to the property and the parties." *Itar-Tass*, 153 F.3d at 90; *accord Levitin v. Sony Music Entm't*, 101 F. Supp. 3d 376, 386 (S.D.N.Y. 2015). Here, Russia has the most significant relationship based on the Complaint's allegations that "Channel One's channels are first broadcast in the Russian Federation and consist mostly of works created in and published in the Russian Federation authored by Russian nationals."

One of the exclusive rights under a copyright is the right "to reproduce the copyrighted works in copies." 17 U.S.C. § 106. The Complaint alleges facts that reasonably show that Plaintiff is the owner of the exclusive right to reproduce the Programming under Russian law. Russian law grants broadcasters who (1) are "located on the territory of the Russian Federation" and (2) "carr[y] out . . . communication by means of transmitters located on the territory of the Russian Federation" with certain exclusive rights over the content they transmit. Grazhdanskii Protsessual'nyi Kodeks Rossiiskoi Federaltsii [GK RF] [Civil Code] art. 1332 (Russ.). Article 1329 defines a broadcaster as "a legal entity independently determining the content of radio and TV programs . . . and communicating them over air or by cable by their own assets or with the help of third persons." *Id*. art. 1329. Article 1330 grants broadcasters "an exclusive right to legally communicate broadcast or cable programmes . . . including by methods indicated

in Item 2 of the present Article." *Id.* art. 1330. Item 2 elaborates on the scope of the broadcaster's exclusive rights, which includes, *inter alia*, the "reproduction of a record of a radio or TV broadcast, i.e. the manufacturing of one or more copies of the record of a radio or TV broadcast or any part thereof in any material form." *Id.*; *see also* 2 Irina Savelieva, *Copyright Throughout the World* § 30:26 (Article 1330 grants broadcasting organizations with a "general exclusive economic right" to their broadcasts, including the exclusive right of reproduction, distribution, public performance.).

The Complaint alleges facts that reasonably show that Plaintiff is the owner of an exclusive right to reproduce the Programming in copies under Article 1330. First, Channel One is a broadcaster because it produces television channels and transmits that content using satellite and cable communications. *See* Civil Code art. 1329. Second, the Complaint alleges that Channel One is located in the Russian Federation, and that its Programming is first broadcast in the Russian Federation. *See id.* art. 1332. Therefore, Plaintiff has the exclusive right to reproduce the Programming in copies under Russian law. *See id. art.* 1330.

The exclusive right of reproduction under Russian law is analogous to the "exclusive right" to "reproduce the . . . work in copies" under U.S. copyright law, 17 U.S.C. § 106. In both cases, reproduction concerns the right to place the protected work on a material object to make a copy. As Russian Law grants Plaintiff the exclusive right to reproduce its programming, and the Copyright Act protects an exclusive owner of the right of reproduction against infringement, *see* Civil Code art. 1330, Plaintiff has standing to sue for infringement of that right under the Copyright Act and is the owner of a copyright under Russian law.

Defendants argue that Channel One is no longer the legal or beneficial owner of an exclusive right because it entered into licensing agreements providing "non-parties with the

*exclusive* right to broadcast and re-broadcast [its] Programming . . . in the United States."
(emphasis in original)  This argument is unavailing because the right to broadcast programming
and the right to reproduce it are separate protectable exclusive rights.  To "broadcast" is to
"disseminate . . . from a radio or television transmitting station to the receiving sets of listeners
and viewers."  *Broadcast*, Oxford English Dictionary (2nd ed. 1989).  Of the six rights protected
by copyright law, broadcasting to an audience implicates the exclusive right to "perform the
copyrighted work publicly" or "display the copyrighted work publicly."  *See* 17 U.S.C. § 101
(defining "to perform or display a work publicly" as to "transmit or otherwise communicate a
performance . . . to the public, by means of any device or process, . . . [even if] members of the
public receive it . . .  in separate places . . . at different times"); *see also Am. Broad. Companies,
Inc. v. Aereo, Inc.*, 573 U.S. 431, 445 (2014) (stating that "stream[ing] the sounds and images of
a broadcast program to a subscriber's screen" is a performance); NIMMER ON COPYRIGHT § 4.11
("[B]roadcasting *per se* is merely a performance.").  In contrast, the right of reproduction entails
the right to have the work "embodied in a medium . . . for a period of more than transitory
duration."  *Cartoon Network LP, LLLP v. CSC Holdings, Inc*., 536 F.3d 121, 139–40 (2d Cir.
2008).  Although granting an exclusive license to "broadcast and re-broadcast" the Programming
in the United States may have transferred or eliminated Channel One's exclusive right to
publicly "perform" the Programming in the United States, nothing in the Complaint suggests that
Plaintiff also transferred its right to reproduce the Programming.

 As the Complaint alleges facts that raise the reasonable inference that Plaintiff has an
exclusive right to make copies of the Programming under Russian law, Plaintiff has standing to
sue and satisfies the first element of ownership required for an infringement claim under the
Copyright Act.

## 2. Copyright Infringement

The Complaint states a claim for direct infringement and, in the alternative, for secondary infringement. In addition to ownership, an infringement claim must allege "infringement of the copyright by the defendant." *Spinelli*, 903 F.3d at 197 (quoting *Yurman*, 262 F.3d at 109) (internal quotations omitted). Although the Copyright Act expressly creates liability only for direct infringers, the Supreme Court has held that third-parties may be liable for copyright infringement if they "intentionally induc[e] or encourage[e] direct infringement" (contributory liability) or "profit[] from direct infringement while declining to exercise a right to stop or limit it" (vicarious liability). *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).

### a. Direct Infringement

The motion to dismiss Count VII is denied because the Complaint plausibly alleges that Russian TV directly infringed Plaintiff's exclusive right to reproduce the Programming "in copies" by intercepting and storing it on a CDN for Defendants' subscribers to access.

"Copies," as defined in the Copyright Act, "are material objects ... in which a work is fixed by any method ... and from which the work can be ... reproduced." 17 U.S.C. § 101. This language imposes two requirements: "the work must be embodied in a medium . . . (the 'embodiment requirement'), and it must remain thus embodied 'for a period of more than transitory duration (the 'duration requirement')." *Cartoon Network*, 536 F3d at 127 (internal quotation marks omitted). The duration requirement is "necessarily fact-specific," and the Second Circuit held that work embodied "for 1.2 seconds before being automatically overwritten" in a buffer does not meet the duration requirement, while content embodied for "at least several minutes" in a computer's RAM may do so. *Id.* at 128, 130.

The Complaint sufficiently pleads embodiment because it alleges that Defendants took and stored Plaintiff's Programming on a CDN for Russian TV's subscribers to access. *See Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 649–50 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (holding that "the embodiment of a digital music file on a new hard disk is a reproduction"). As for the physical duration requirement, drawing all inferences in favor of Plaintiff as the non-moving party, it is reasonable to infer that the Programming data remains on the CDN for "at least several minutes" because the Complaint alleges that Defendants "store" Plaintiff's programming signals "via equipment, including computer servers, located in the United States." *See Cartoon Network*, 536 F.3d at 127 (noting that a program embodied in a computer's RAM for "at least several minutes" may satisfy the duration requirement).

### b. Secondary Infringement

The motion to dismiss the claim of secondary copyright infringement (Count VIII) is denied. This claim is alleged in the alternative to the claim for primary copyright infringement. Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). In other words, the claim alleges that in the event that Russian TV (the surviving Defendant on this motion) is not a primary infringer -- i.e., in the event that someone other than Russian TV is unlawfully reproducing the Programming -- Russian TV is nevertheless liable because it "induce[d], contribute[d] to, and [is] vicariously liable for any copyright infringement committed by [its] subscribers or other persons that are provided access to the . . . infringing services," for example by providing "a product that enables infringement," or by "fail[ing] to supervise the activity taking place on their platforms" and because Russian TV "enjoy[s] a direct financial benefit from the infringements." A person "infringes contributorily by intentionally inducing or encouraging direct infringement, and infringes vicariously by

profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer*, 545 U.S. at 930 (internal citations omitted).

The Complaint states a claim for contributory liability. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a contributory infringer." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117–18 (2d Cir. 2010) (emphasis, quotation marks and citation omitted). "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know *or have reason to know* of the direct infringement." *Id*. at 118 (emphasis in original) (quotation marks and citation omitted). "Liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *Id*. (quotation marks and citation omitted).

The Complaint alleges that (1) Russian TV "creat[es], maintain[s] and operat[es]" an "unauthorized [w]ebsite" and "provid[es] streaming services and credit card processing for www.russiantvcompany.com"; (2) Russian TV offers its unlawful streaming services "at far lower prices than lawfully licensed services"; and (3) Channel One licenses the right to broadcast their programs to third-parties, but Russian TV is not one of its licensees. As Russian TV maintains a website that provides subscribers access to unlicensed Channel One content at far lower prices than authorized Channel One subscription services, the Complaint plausibly alleges that Russian TV knew or had reason to know it was selling Programming acquired through infringing activity.

The Complaint also alleges that Russian TV accesses the infringing Programming "by agreement with other parties located abroad," advertises access to the infringing Programming on its website and distributes the infringing Programming to subscribers "at far lower prices than lawfully licensed services." Based on these allegations, the Complaint plausibly alleges that

Russian TV "materially contributes" to the unauthorized reproduction of the Programming by creating demand for it, advertising access to it on the Russian TV website and distributing it to subscribers. *See Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (noting that plaintiff may be able to state a claim for contributory copyright infringement by alleging that "facilitating the unauthorized exchange of copyrighted material was a central component of the defendants' business strategy"); *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 384 (S.D.N.Y. 2016) (holding that the complaint stated a plausible claim for secondary infringement against an artist that "used and distributed images [of the infringing work] . . . across various websites and social media platforms").

### C. Trademark Violations

The Complaint fails to state a claim for trademark infringement (Count V) and false advertising (Count VI) under the Lanham Act. These claims are dismissed.

#### 1. Trademark Infringement

The Complaint fails to state a claim of trademark infringement under the Lanham Act (Count V), because it does not plausibly plead that Defendants' actions are likely to confuse consumers as to whether Plaintiff originated or sponsored Russian TV. A claim of trademark infringement under 15 U.S.C. § 1125 of the Lanham Act is analyzed under a two-prong test: (1) whether the plaintiff's mark is entitled to protection and (2) whether the defendant's use of its mark is "likely to cause consumers confusion as to the origin or sponsorship of the [plaintiff's] goods." *Guthrie Healthcare Sys. v. ContextMedia, Inc.,* 826 F.3d 27, 37 (2d Cir. 2016) (analyzing a trademark infringement claim brought under § 1114); *see 1-800 Contacts, Inc. v.*

*WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (applying the same legal standard to analyze trademark infringement claims under § 1114 and § 1125).

The Complaint alleges no facts to show that consumers are likely to be confused about whether Plaintiff or Defendants are the source of the Programming. The Complaint instead alleges that the Defendants display Plaintiff's marks. "[A]s a general rule, the Lanham Act does not impose liability for the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner because such a sale does not inherently cause confusion or dilution." *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (internal quotation marks omitted); *accord Burton v. Label, LLC*, No. 15 Civ. 5793, 2018 WL 4759735, at *13 (S.D.N.Y. Sept. 30, 2018) ("Selling trademarked goods under its trademarked name is not a violation of the Lanham Act.").

### 2. False Advertising

The false advertising claim (Count VI) is dismissed because the Complaint does not identify an advertising or promotional message that is literally or impliedly false. "Any person who . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities" is liable under the Lanham Act. 15 U.S.C. § 1125(a)(1)(B). To prevail on a Lanham Act false advertising claim, a plaintiff must plead that the defendant made representations in its "commercial advertising or promotion" that are "(1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics,*

*GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

The Complaint does not identify any "commercial advertising or promotion"[3] of Defendants' that is literally or impliedly false. The Complaint appends a screenshot of Russian TV's website, which states "Watch Russian TV online[.] Over 200 . . . channels." Although this may be advertising, it is not alleged to be false. The Complaint also appends screenshots of Plaintiff's content being broadcast by Defendants, but these broadcasts are not "advertising or promotion" nor are they alleged to be false. Finally, the Complaint alleges that TechStudio advertises access to Russian language channels on its storefront, but not that the advertising is false.

To the extent the advertising claim is based on the notion that Defendants mislead consumers by "making it appear that Defendants have the right to rebroadcast [Channel One] Programming and Channels," this argument fails because the allegedly false advertisement does not misrepresent "the nature, characteristics, qualities, or geographic origin of . . . goods or services." *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001); *accord Lieb v. Korangy Publ'g, Inc.*, No. 15 Civ. 40, 2016 WL 8711195, at *6 (E.D.N.Y. Sept. 30, 2016). False statements that Russian TV was authorized to broadcast the Programming do not concern the nature, characteristics, qualities, or geographic origin of the Programming. *See, e.g., Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 308 (S.D.N.Y. 2011) (holding that the plaintiff's false advertising claim failed because it was "premised on [the defendants'] false

---

[3] The "display" of Plaintiff's trademarks that appear at the corner of the screen when users stream the Programming from the Russian TV's website is not a "commercial advertising or promotion" under § 1125(a)(1)(B). *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) ("[T]he touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market.").

statements that they were authorized to distribute the images" but the misrepresentation did not concern "the nature, characteristics, qualities, or geographic origin" of the photographs).

Plaintiff's false advertising claim (Count VI) is dismissed.

### D.     DMCA Anti-trafficking Claim

The DMCA anti-trafficking claim (Count IV) is dismissed.  The DMCA anti-trafficking provision, in relevant part, prohibits individuals from providing or otherwise trafficking in any "technology, product, service, device, component, or part thereof, that is . . . designed or produced for the purpose of circumventing a technological measure."  17 U.S.C. §§ 1201(a)(2), (b)(1); *see Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 440–41 (2d Cir. 2001).

The Complaint does not plead that the STBs that Defendants provide their customers are the means by which Defendants circumvent Plaintiff's encryption of the Programming.  As described above, Plaintiff offers two alternative theories of how Defendants intercept Plaintiff's programming.  In one case Defendants decrypt the satellite signal when it is transmitted in Russia or its neighboring states.  In the other case, Defendants intercept an already decrypted signal after Plaintiff has transmitted it to a cable operator in Russia or its neighboring states.  In either case, the content is decrypted before it reaches the unauthorized user's STB that Defendants sell.

Count IV, the DMCA trafficking claim, is carefully worded and does not allege that Defendants provide or sell a device that circumvents Plaintiff's encryption.  *See Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 467 (E.D.N.Y. 2012) (holding that to state a claim under the DMCA's anti-trafficking provision, the complaint must allege that "[d]efendants trafficked in a product or service that *enabled* the circumvention, not access to what has already been obtained" (emphasis in original)).  Count IV alleges that Defendants distributed a device

that "permits end-users to bypass" Plaintiff's encryption. Read in the context of the remainder of the Complaint, this allegation simply means that the STBs are the means by which some of Defendants' customers (those who use an STB rather than downloaded software for access) are able to access Plaintiff's previously decrypted Programming. Without pleading facts that support the allegation that the products Defendants sold directly circumvent Plaintiff's security measures, the Complaint fails to state a claim under the DMCA's anti-trafficking provision.

    **E.**    **State Law Claim of "Unfair Competition and Common Law Infringement"**

The Complaint's state law claim for "unfair competition and common law infringement" (Count X) is dismissed as preempted by the Copyright Act. The claim alleges that Defendants' conduct is "unlawful, unfair, and fraudulent business practices in violation of the general business, trade regulation, and unfair competition laws of the State of New York." The claim seeks only equitable relief in the form of an injunction barring Defendants from "misappropriat[ing] the [c]hannels, Programming, trademarks and other rights" of Plaintiff, and an accounting of Defendants' profits from "unfair competition practices with respect to the Programming."

Under § 301 of the Copyright Act, a state law claim is preempted if (1) it seeks to vindicate "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright" under § 106 (the equivalency requirement); (2) the particular works to which the state law claim is being applied "come within the subject matter of copyright as specified by sections 102 and 103" (the subject matter requirement). 17 U.S.C. § 301; *see also Forest Park Pictures v. Universal Tel. Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).

Both requirements for preemption are satisfied here. The subject matter requirement is met because the Programming falls within the ambit of copyright protection as "audiovisual

works" under 17 U.S.C. § 102(a)(6). The works in question "need only fit into one of the copyrightable categories in a broad sense" and "need not consist entirely of copyrightable material." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004); *accord Kennedy v. LaCasse*, No. 17 Civ. 2970, 2017 WL 3098107, at *3 (S.D.N.Y. July 20, 2017).

The equivalency requirement is satisfied because the Complaint's state law claims are based on Russian TV's unauthorized reproduction of the Programming. The equivalency requirement is satisfied when the state law right "may be abridged by an act that would, by itself, infringe one of the exclusive rights" under federal copyright law. *Forest Park Pictures*, 683 F.3d at 429. In other words, the alleged violation of the state law must be based on "acts of reproduction, adaptation, performance, distribution or display" because these rights are protected under the Copyright Act. *See id.* (citing 17 U.S.C. § 106). "But if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, there is no preemption." *Id.* at 430 (internal quotation marks omitted).

Here the state law claim of unfair competition relies entirely on the previous allegations supporting the copyright claims. No extra element is identified, nor is there one. Unfair competition claims "grounded solely in the copying of a plaintiff's protected expression are preempted by section 301 [of the Copyright Act]." *Computer Assoc's Intern. Inc. v. Altai, Inc.*, 982 F. 2d 693, 717 (2d Cir. 1992); *see also Jacino v. Illinois Tool Works Inc.*, 16 Civ. 1704, 2017 WL 4480752, at *5 (E.D.N.Y Oct. 6, 2017). Similarly, the demand based on state law for an accounting and injunctive relief seeks redress for a violation of the same rights protected by the Copyright Act. *See Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 Fed.

App'x 710, 712 (2d Cir. 2017), *cert denied sub nom. Baiul v. NBC Sports*, 138 S. Ct. 1299 (2018) (summary order) (holding accounting claim preempted and citing *Weber v. Geffen Records, Inc.*, 63 F.Supp. 2d 458, 463 (S.D.N.Y. 1999)).

Although the Copyright Act does not preempt unfair competition claims based on a theory of "passing off," the Complaint does not assert that theory -- i.e., does not allege that Russian TV created its *own* channels and programming and misrepresented them as Channel One's. *See ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 858 (N.Y. 2007). Instead, the Complaint alleges that Russian TV "misappropriat[ed] . . . Channels, Programming [and] trademarks . . . *belonging to Channel One*" by reproducing them without authorization. This claim is preempted by the Copyright Act because it is "based solely on the copying of . . . protected expression." *See Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993); *see also Wolstenholme v. Hirst*, 271 F. Supp. 3d 625, 642 (S.D.N.Y. 2017) ("[T]o survive preemption, the plaintiff must allege that the confusion forming the basis for the unfair competition claim was created by some act other than copying."); *Shepard v. European Pressphoto Agency*, 291 F. Supp. 3d 465, 475–76 (S.D.N.Y. 2017) (holding that a plaintiff's unfair competition claim based on a photo agency's unauthorized display of a photographer's work with the photo agency's watermark on it was preempted by the Copyright Act).

Plaintiff argues for the first time in its opposition memorandum of law that Russian TV is "passing off the Russian version of Channel One Programming as the edited version of the Channel One Programming that is licensed to cable companies and IPTV providers." This argument is unavailing first, because the underlying facts are not alleged in the Complaint; and second, because it is not based on a theory of passing off. Plaintiff argues that Russian TV misrepresented the programming Channel One licensed in Russia as the programming Channel

One licensed in the United States. However, this alleged misrepresentation does not deceive consumers into believing they are watching Channel One programming when they are in fact watching Russian TV content. *See* NIMMER ON COPYRIGHT § 1.15 ("If *A* claims that *B* is selling *B*'s products and representing to the public that they are *A*'s, that form of deception constitutes 'passing off.'"). As the Complaint's state law claims are equivalent to rights protected under the Copyright Act, they are preempted.

### F. Leave to Amend

"Leave to amend should be 'freely give[n] . . . when justice so requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility [or] undue delay . . . ." *United States ex rel. Ladas v. Exelis, Inc*., 824 F.3d 16, 28 (2d Cir. 2016) (internal quotation marks omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017).

Plaintiff's cross-motion to amend the complaint is denied without prejudice to renewal. Plaintiff shall file (1) a letter application on or before March 25, 2019, not to exceed three, single-spaced pages, describing how it would amend the Complaint to remedy the deficiencies identified in this Opinion and explaining how any causes of action apart from those that remain after this decision are useful or necessary, and not simply cumulative of the surviving claims; (2) a proposed Amended Complaint; and (3) a red-line copy showing changes between the Complaint and the proposed Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Counts IV, V, VI and X against Russian TV is GRANTED. Defendants' motion to dismiss Count VII and Count VIII of the Complaint is DENIED. Defendants' motion to dismiss Defendants Rudik and Techstudio is

GRANTED.  Plaintiff's motion to amend the Complaint is DENIED without prejudice to renewal.  The Clerk of Court is respectfully directed to close the motions at Docket Numbers 51 and 44.

Dated: February 21, 2019
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**