UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"

                                Plaintiff,

     -against-

RUSSIAN TV COMPANY, INC., SR EXPRESS
CONSULTING INC. d/b/a TECHSTUDIO,
STEVEN RUDIK, SERVERNAYA INC.,
and John Does 1-10.

                           Defendants.
--------------------------------------------------------------------X

Index No.  18-cv-2318

**AMENDED VERIFIED
COMPLAINT**

       Plaintiff Joint Stock Company "Channel One Russia Worldwide" ("Channel One" or

"Broadcaster"), by its attorneys, Dunnington Bartholow & Miller LLP ("Dunnington"), as and

for an Amended Verified Complaint for violations of the Federal Communications Act and the

Copyright Act against Defendants Russian TV Company, Inc. ("RTV"), SR Express Consulting

Inc. d/b/a Techstudio ("Techstudio"), Servernaya Inc. ("Servernaya"), and Steven Rudik

("Rudik") (collectively "Defendants") avers as follows:

### PRELIMINARY STATEMENT

       1.      This case concerns the wholesale piracy by Defendants of Channel One

Programming (the "Programming") first broadcast via satellite in the Russian Federation.

Defendants conspire to intercept and redistribute the Programming without permission via

Internet Protocol Television ("IPTV") to viewers in this district.  Defendant Steven Rudik

personally participates in this infringement scheme and has attempted to insulate himself from

liability through a seemingly endless stream of zombie corporations that are effectively judgment

proof and created solely to conceal infringement proceeds.

1



2.      IPTV, unlike satellite or cable television, allows for the decentralized distribution of programming by data packets that may travel from transcoders via multiple content delivery networks and servers located in multiple jurisdictions throughout the world to an end consumer who may view the programming on a desktop computer, a set-top box ("STB") connected TV, SMART TV, app, laptop, tablet, or phone. Therefore, the precise method of Defendants' piracy and the names of the John Does that aid the piracy are exclusively within the knowledge of Defendants.

3.      Rudik, RTV, Techstudio, and Servernaya, (collectively ""Defendants") obtain the Programming knowing that Channel One has not licensed the Programming to them. The Defendants process and store the Programming on servers and then charge subscribers for this pirated Programming. Non-parties, including Gregory Goldfedib and Infomir, LLC (collectively "Infomir") provide a pirated signal, Aura software that processes the signal, middleware, called Stalker AKA Ministra, that enables billing and provides conditional access to paying subscribers of RTV and other unlicensed broadcasters. This illicit scheme enables RTV to appear to be a legitimate broadcaster of Channel One programming. It is not.

4.      Channel One produces and broadcasts original and licensed television programming protected by copyright and trademark in the Russian Federation (the "Programming"). Consumers cannot access the Programming in the United States without paying a fee to a licensed distributor. Channel One's main distribution in the United States is through satellite, IPTV and cable. Channel One employs technological measures like encryption to protect the Programming from unauthorized access by consumers in the United States.

5.      Without a license or any permission from Channel One, Defendants provide IPTV video streaming services of Channel One Programming to paying subscribers throughout the United States, including this district. Using an unauthorized system not yet fully known to

Channel One, Defendants intercept Broadcaster's encrypted foreign satellite transmissions, transform the transmissions into digital data, then re-transmit the television channels over the internet to paying subscribers in the United States using video streaming services that are viewable on desktop computers, tablets, phones, and  customized set top boxes ("STBs").

6.     Until approximately January 2017, Rudik purchased U.S. subscriptions to Kartina TV, an authorized IPTV distributor of Channel One Programming.  On or around 2015, Rudik and Infomir agreed to set up a piracy operation in Brooklyn.  Rudik and Infomir did so with the intent to intercept Channel One's satellite communications and infringe the copyrighted and trademarked Programming for commercial purposes by publishing, distributing and displaying the Programming without permission.

7.     Infomir supplied Rudik with Infomir-brand MAG STBs called "alfaboxes" pre-loaded with "Aura" software that would bypass Channel One's encryption and technological protection measures and permitted U.S. consumers to view the Programming.  Infomir also provided RTV with a billing and conditional access system named Stalker AKA Ministra Middleware ("Stalker") that interacted with the "Aura" software.

8.     Using a unique Media Access Control ("MAC") address assigned to each STB by Infomir, Stalker verifies passwords and credit card information so that Rudik can ensure that U.S. consumers paid him or RTV for the illicit service.  Ultimately, subscribers of RTV are able to view Channel One Programming on their televisions by connecting their TVs to the alfabox, which connects to the Stalker servers.

9.     Each time a U.S. consumer accesses pirated Programming, the alfabox sends a query to Infomir using the pre-loaded Aura software, which, in turn, accesses a Stalker server. Infomir, in turn responds to the query by validating the STB and the consumer's ability to access

3

content.  Accordingly, each time a U.S. consumer accesses pirated Programming using an

alfabox, Infomir plays an active role in granting permission.

10.     Each time Infomir validates an RTV alfabox, Infomir does so knowing that the

alfabox will copy, publish, distribute and perform the Programming by streaming video to U.S.

consumers without Channel One's consent in violation of the FCA, and Copyright Act.

11.     Pursuant to the agreement between Rudik and Infomir, all Defendants, with intent

to willfully intercept, pirate and infringe the Programming and to exploit it on an industrial scale,

set up and deployed a system using a series of corporate shell entities completely devoted to

piracy using the alfabox STBs.  Rudik and Infomir engaged in this scheme because they know

that Channel One has not authorized RTV to distribute its Programming.

12.     The Defendants  have no legitimate business purpose outside of piracy.  The

Defendants  are all wholly-owned by Rudik and exploited by Rudik to obtain, process and

redistribute unlicensed programing, to collect subscription fees from U.S. consumers for the

Programming.  Rudik completely dominates these entities which are used to siphon off profits

from intercepting and, distributing and performing the Programming. Rudik uses Techstudio to

purchase pirated programming from Apeiron Global Services OU ("Apeiron Global"), and upon

information and belief other John Does.  Rudik also uses Techstudio to purchase the alfabox and

other MAG STBs from Infomir.  Upon information and belief, Techstudio, , RTV and

Servernaya do not observe corporate formalities and commingle assets to serve as Rudik's

personal piggy bank.

13.     At Rudik's behest, Infomir customizes the alfabox and MAG STBs to make them

"plug and play" ready for subscribers of RTV to access the Programming in the United States.

Infomir does this by installing its "Aura" coding, or firmware, on alfabox and MAG STBs that

creates a user interface for consumers to operate the STBs and connects the STBs to data servers

from which the devices receive IPTV data stream.  The pre-loaded interface includes an

electronic programming guide with the Programming listed by channel. Despite Channel One's

complaints about RTV's distribution of the alfaboxes and provision of pirated Programming,

Infomir has refused to block infringing Programming.

14.     RTV also maintains a two week library of the Programming on its website that

permits U.S. consumers to access the Programming on demand.  This way, U.S. consumers who

miss a show may go back and view programming stored on servers leased by Techstudio and

Servernaya.  This library is evidence of willful infringement.

15.     Channel One is not certain how Rudik actually intercepts, obtains and distributes

the Programming.  It is important to understand that the Programming taken from the satellite

must first be digitized into information transferrable through the internet. Evidence suggests that

Rudik uses Techstudio to purchase pirated programming from Apeiron Global.  Evidence further

suggests that, Servernaya encodes and processes the pirated programming on its servers or in

conjunction with third party servers, and then redistributes the programming to RTV subscribers

as IPTV by transmitting the pirated programming to the consumers' alfabox or MAG using

Infomir software.  But whatever the precise technical methods used to accomplish interception

and infringement, such proof is not necessary for Channel One to prevail: the evidence of

delivery of intercepted and infringing content to U.S. consumers is clear.

16.     Infomir is, according to a Sandvine report, one of the largest facilitators of IPTV

piracy in the United States. *See* Spangler, Todd, *Variety*, Pay TV's Piracy Pain:  6.5% of North

American Households Stream Illegal Services, Study Finds (November 1, 2017).  IPTV piracy,

according to Sandvine, accounts for approximately 6.5% of the U.S. IPTV market.  Infomir's

website and marketing materials show that its software and technical support is designed to assist

pirates in becoming their own "cable television company." Infomir's promotional materials are evidence of willful infringement.

17.     Rudik is personally liable under the FCA and the Copyright Act for his willful acts of interception and infringement. Rudik has complete dominion and control of RTV, Techstudio, and Servernaya. Rudik directs the transfer of funds among the entities and himself. Rudik uses bank accounts of these entities interchangeably to accept payments from customers, pay vendors, and pay for the elicit programming. Rudik uses this web of entities to commit his piracy and evade detection. Infomir conducts business with Rudik via telephone and other unrecorded means to conceal the relationship among the parties. Infomir accepts orders for Infomir brand STBs from Techstudio and services the STBs for RTV.

18.     In customizing alfabox STBs, the Infomir Defendants fail to take reasonable antipiracy security measures in manufacturing the device and in distributing software consistent with industry standards, such as https security, blacklisting and extended validation certificates or implementing other industry-standard antipiracy measures. This failure, combined with Infomir-designed Stalker converts the STBs into circumvention tools designed primarily to promote piracy by others, and ensuring that the primary use of the STBs is the piracy of Channel One's copyright-protected content. Although the Infomir Defendants could block known pirates from using the STBs by simply updating the firmware that runs the boxes to block unauthorized streaming, the Infomir Defendants refuse to do so. Thus, the Infomir Defendants both (1) operate a pirate streaming service and (2) manufacture and sell equipment and software designed to assist and profit from other pirates, essentially a "piracy startup kit." Infomir calls this service the MAGic Solution.

19.     Because each Defendant either directly intercepts Broadcaster's satellite communications of television channels or knowingly re-transmits intercepted satellite

communications of television channels, each Defendant's conduct violates the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151 *et seq.* The FCA also forbids selling devices that permit access to intercepted satellite communications. Defendants have all violated both FCA provisions.

20.     Because each Defendant unlawfully and knowingly copies content protected by the Copyright Act and knowingly assists others in doing so, each Defendant's conduct violates the provisions of those statutes forbidding direct and secondary copyright infringement.

21.     Because Channel One does not know exactly how Defendants intercept satellite communications and cannot presently state whether and to what extent additional persons are involved in the interception, data conversion, and resales process leading to the illegal streams identified herein, John Does 1-10 are named. Under the Copyright Act, such tortfeasors are not necessary or indispensable parties. Because the evidence of how Channel One's satellite communications are intercepted and distributed is uniquely in the possession of Defendants or Defendants' John Doe agents or accomplices, including payment processors, and content delivery networks ("CDNs"), Channel One is unable to plead additional facts or identify additional infringers until discovery of the supplemental defendants is had. Channel One expects that certain John Does will be corporations that transmit large amounts of data traffic over the internet such as content delivery networks. Through these proceedings, Channel One seeks to identify and block all such infringing transmissions.

## THE PARTIES

### A. Plaintiff

22.     Plaintiff Channel One is a joint stock company located in and organized under the laws of the Russian Federation with its headquarters located at 19 Akademika Koroleva St.

7

Moscow, 127427 Russian Federation. Channel One produces, among others, "Channel One." The Channel One logo is:



Channel One's television channels have the largest audience in the Russian Federation and the Commonwealth of Independent States ("CIS"). Channel One broadcasts a wide range of news, documentary and feature film productions, as well as entertainment programs that attract a greater number of viewers each year. Among the other channels produced by Channel One are a European and U.S. version of Channel One Russia Worldwide, Dom Kino, Muzika Pervogo, Vremya:dalekoe i blizkoe, Carousel International, and Telekafe. Additionally, Channel One is authorized by its parent corporation to represent its interests relating to unauthorized distribution of the Russian version of Channel One Russia.

23.     The logo of the Dom Kino channel is:



24.     The logo of the Carousel International channel is:



25.     The logo of the Muzika Pervogo channel is:

8





26.      The logo of the Telekafe channel is:



27.      The logo of the Vremya:dalekoe i blizkoe channel is:



28.      Channel One's Programming is first broadcast in the Russian Federation and consists mostly of works created in and published in the Russian Federation authored by Russian nationals.

29.      Channel One's satellite signal for the Programming in the United States is encrypted with the exception of the "C-band" format which requires a dish bigger than 2 meters (6.5') as well as special professional equipment to receive.  This means that the ordinary consumer in the United States cannot access the Programming without a professional intermediary broadcaster or cable company which must acquire a license from Channel One to lawfully redistribute the Programming.

30.      Channel One has entered into license agreements with one or more third parties to distribute its programs via IPTV in the United States.  Because Channel One is obligated to charge at least as much for its programming to any third party pursuant to a "most favored nation" clause, Defendants' actions cause Channel One immediate and irreparable harm because its licensing efforts to attract subscribers are undercut by pirates offering lower prices.

9



31.     Channel One's established, famous trademarks in the United States and international versions of its Russian-language channels are known to a loyal fan base in the United States and are distributed through reputable distributors, including Spectrum, Directv, Optimum and Xfinity.  Attached hereto as **Exhibit 1** is a screenshot of the Spectrum advertising Channel One in the United States. Attached hereto as **Exhibit 2** is a screenshot of the Directv website advertising Channel One in the United States.  Attached hereto as **Exhibit 3** is a screenshot of the Optimum website advertising Channel One in the United States.  Attached hereto as **Exhibit 4** is a screenshot of the Xfinity website advertising Channel One in the United States.

32.     Defendants are not authorized to broadcast Channel One, Dom Kino, Carousel International, Muzika Pervogo, Telekafe, or Vremya:dalekoe i blizkoe in the United States or elsewhere.

## B.  Defendants

### a.  Steven Rudik

33.     Rudik is a resident of Brooklyn, New York.

34.     On or around 2015, Rudik decided to circumvent Channel One's licensing program to knowingly and willfully purchase and distribute to U.S. consumers pirated versions of the Programming by means of devices pre-configured to promote piracy of satellite broadcasts.  Attached hereto as **Exhibit 5** are screenshots of https://russiantvcompany.com from April 2014 to October 2014 showing RTV sales of Russian language Programming.

35.     Additionally, Rudik obtained access to a library of the Programming and sells access codes to U.S. consumers that permit U.S. consumers to display, perform, copy and view the Programming on demand at https://russiantvcompany.com.

10

36.     Rudik is the owner and operator of Techstudio, RTV, and Servernaya, , each of which Rudik has used to obtain and distribute programming and allocate profits from his piracy of the Programming.  Attached hereto as **Exhibit 6**  is a screenshot of Rudik's LinkedIn page.

37.     Rudik has complete dominion and control of RTV, Techstudio, and Servernaya,. Rudik directs the transfer of funds among the entities and himself.  Rudik uses bank accounts of these entities interchangeably to accept payments from customers, pay vendors, and pay for the elicit programming.  Rudik uses this web of entities to commit his piracy and evade detection.

38.     Rudik purchases pirated Programming from Apeiron Global and other John Does through Techstudio.

39.     Rudik uses Techstudio to purchase the alfabox and other MAG STBs from Infomir.

40.     Rudik uses Techstudio and Servernaya to process and redistribute the unlicensed Chanel One Programming obtained from Apeiron Global and other John Does.

41.     Rudik uses RTV to sell pirated Channel One Programming via IPTV to customers in this district.

42.     Rudik conducts his piracy business from offices at 1400 or 1404 Ave Z which are located in the same building.

### b.  Russian TV Company, Inc.

43.     RTV is a for profit domestic business corporation organized under the laws of the State of New York with a principal place of business located at 1404 Avenue Z, Brooklyn, New York 11235.  Attached hereto as **Exhibit 7** is the New York Department of State Certificate of Incorporation for Russian TV Company.

44.     Rudik incorporated RTV on or around April 2015.  *See* Exhibit 7.

45.     RTV is a subscription service used to distribute pirated Russian programming, including that of Channel One.

46.     RTV owns and operates the website https://russiantvcompany.com which provides unauthorized access to video streams of pirated versions of the Programming to paying subscribers in the United States. Attached hereto as **Exhibit 8** are screenshots displaying RTV website, https://russiantvcompany.com, homepage advertising Russian television streaming for monthly fee. RTV also maintains a library of the Programming for two weeks and makes it available to subscribers. RTV also sells to its subscribers Infomir brand STBs, including the alfabox, which are designed to access the Programming without Channel One's authority because the STBs are pre-configured with software to facilitate piracy by giving U.S. consumers a menu of television offerings including the Programming.

**c.  SR Express Consulting Inc. d/b/a Techstudio**

47.     SR Express Consulting Inc. doing business as "Techstudio" is a for profit domestic business corporation owned by Steven Rudik organized under the laws of the State of New York with a principal place of business located at 1404 Avenue Z, Brooklyn, New York 11235 . Attached hereto as **Exhibit 9** is the New York Department of State Entity Information for SR Express Consulting Inc and its 2010 Biennial Statement.

48.     Techstudio is a DBA of SR Express Consulting, Inc. Techstudio also shares an address with RTV. Attached hereto as **Exhibit 10** is a contract between SR Express Consulting Inc. DBA Techstudio and Techstudio Ukraine.

49.     The latest corporate filing of SR Express Consulting, Inc. available from the NYDOS lists Rudik as President. *See* Exhibit 9.

50.     Though a search showed that Rudik has not registered Techstudio as a DBA of SR Express Consulting Inc. with the New York Secretary of State, Techstudio is listed as a DBA

of SR Express Consulting Inc. on bank statements for SR Express Consulting Inc.  Attached

hereto as **Exhibit 11** is true and correct copy of a SR Express Consulting Inc. bank statement

listing Techstudio as its DBA.

51.     Under Rudik's direction and control, Techstudio provides the technological

infrastructure to obtain and distribute the Programming through RTV. Attached hereto as

**Exhibit 12** is a true and correct copy of the Internet Archive June 17, 2017 screenshot of

http://www.techstudio.tv. Available at

http://web.archive.org/web/20170617145345/http://www.techstudio.tv:80/.

52.     Upon information and belief, in furtherance of Rudik's scheme to provide pirated

Programming to U.S. consumers, Techstudio has international offices or affiliates that are

operated by or affiliated with Rudik.  Attached hereto as **Exhibit 13** is a true and correct copy of

a You Control record for Techstudio Ukraine that lists it as a company with limited shares and

Steven Rudik as founder.  Upon information and belief, the same Techstudio Ukraine is an agent

at SR Express.

53.     Upon information and belief, Techstudio purchases pirated Programming from

Apeiron Global and upon information and belief other John Does.  Attached hereto as **Exhibit 14**

is a redacted bank statement showing payments to Apeiron Global.

54.     Additionally, invoices show that Rudik uses Techstudio to purchase the alfabox

and other MAG STBs customized by their manufacturer, Infomir, to make them "plug and play"

for subscribers of RTV.

55.     Rudik makes little effort to hide Techstudio's role in the piracy.  Techstudio

advertises at its business address subscriptions to RTV. Attached hereto as **Exhibit 15** is a

photograph of the storefront at 1404 Avenue Z, Brooklyn, New York 11235.RTV and

Techstudio post nearly identical job descriptions for jobs posted on a job placement message

board.  Attached hereto as **Exhibit 16** and **Exhibit 17** are true and correct copies of job postings

for RTV and Techstudio, respectively.

### d.  Servernaya Inc.

56.     Servernaya Inc. is a for profit corporation doing business at 1404 Avenue Z

Brooklyn, NY 11235.  Attached hereto as **Exhibit 18** is the New York Department of State

Entity Information for Servernaya, Inc.

57.     Rudik owns and operates Servernaya which he uses to further his scheme to

distribute pirated Programming to U.S. consumers.

58.     Upon information and belief, Servernaya encodes and processes the pirated

Programming on its servers, and then redistributes the Programming to RTV subscribers as IPTV

on demand.

59.     Upon information and belief, Rudik transfers funds from Techstudio to

Servernaya to enrich himself and to pay for equipment and pirated content, including servers the

transfer the pirated signal and encode the signal for distribution through the RTV website,

alfabox, and Infomir brand STBs.

### JURISDICTION AND VENUE

60.     The Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1338 with respect to Channel One's federal statutory claims and may assert supplemental

jurisdiction over any other claims or relief pursuant to 28 U.S.C. § 1367.

61.     The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because

this controversy is between citizens of a foreign state and citizens of a state and the amount in

controversy exceeds $75,000.

62.     Defendants are subject to personal jurisdiction in the Southern District of New

York because they are  located in (or within 100 miles of) this judicial district, conduct business

14

in this judicial district, and have engaged in tortious conduct outside the jurisdiction causing damage within the jurisdiction making long arm jurisdiction appropriate under New York law.

63.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c) and 1400 (a).

## ALLEGATIONS COMMON TO ALL DEFENDANTS

64.     This is an action to restrain the unauthorized interception of foreign satellite "over the air" transmissions and to restrain subsequent re-broadcasts, transfers and re-transmissions of valuable foreign language television programming through unauthorized video streaming over the internet to paying subscribers in the United States in violation of federal and state law and for damages.

65.     Channel One produces and distributes Russian- Programming that is first broadcast in the Commonwealth of Independent States ("CIS"), including Russia and associate state Turkmenistan as well as Estonia, Lithuania, Latvia and Georgia via satellite footprint (the "Footprint").  A Footprint is the geographic area over which a communications satellite's transponders offer coverage.

66.     There is no simultaneous Broadcast in the United States of Channel One. Additionally, Channel One owns and broadcasts Dom Kino, Muzika Pervogo, Vremya:dalekoe I blizkoe, Telekafe, or Carousel International.  (Each a "Channel" and collectively the "Channels") that collectively form the Programming.

67.     Channel One distributes the Programming, in the first instance, via transmission to a satellite.  Annexed hereto as **Exhibit 19** is a chart showing the satellites used by Channel One ("the Satellites").

68.     Accordingly, the Programming consists entirely of "radio-originated communications" within the meaning of 47 U.S.C. §605(a).

69.     The Programming that Channel One transmits to the Satellites is protected in a manner to ensure that only authorized recipients may lawfully access it.  For purposes of clarity, not all versions of Channel One are encrypted, for example Channel One produces an unencrypted European version that is available in Estonia.  The Programming at issue in this action, however, is a Russian-language version that is available in Estonia only by accessing an encrypted satellite.

70.     Channel One-U.S. content is later broadcast via satellite to the United States via the $K_u$ band and encrypted by Channel One's licensees or via the standard "C-Band" format that requires a dish bigger than 2 meters (6.56 FT) and professional equipment to receive the signal.

71.     Only certain persons within the Footprint are authorized by Channel One to receive the satellite transmissions.

72.     Authorized recipients may include individuals living within the Footprint with satellite dishes who may view the Programming for personal use in exchange for a subscription fee. No Defendant is authorized to distribute the Programming.

73.     Authorized recipients may also include cable operators operating within the Footprint who are authorized to receive satellite transmissions and then redistribute the Programming via an approved cable system to consumers within a limited geographic area within the Footprint.

74.     To permit authorized recipients to view the Programming, Channel One ordinarily causes de-encryption devices to be issued that permit the satellite transmission to be viewed by that particular recipient.

75.     These de-encryption devices effectively control distribution of the Programming and permit access by authorized recipients only.

76.     Each Channel bears a prominent trademark or trademarks and consist principally of copyrighted programs owned by Channel One and protected under Russian copyright law, and contains repeated identifications of the Programming's source.

77.     The Programming in its totality as a compilation of copyrighted works is protected by Russian "neighboring rights" under the Civil Code of the Russian Federation Article 1332.  Article 1332 protects Broadcaster's channels as a compilation regardless of whether or not the Broadcaster owns the underlying copyrighted works forming the Programming.

78.     "Neighboring rights" refers to a Broadcaster's right under Russian law to the totality of the content, including the selection and arrangement of the Programming, regardless of whether certain copyrightable elements have been licensed from a third party, such as a Hollywood film that a Broadcaster may have licensed for the Footprint only.

79.     Defendants are engaged in the unauthorized interception, copying, retransmission, and distribution of encrypted transmissions of these Channel One's Programming through IPTV streaming to paying consumers in this judicial district and throughout the United States in violation of, among other things, Section 605 of the Federal Communication Act 42 U.S.C. §605; and Copyright Act 17 U.S.C. §101 et seq., each of which provides for injunctive relief and damages, together with costs and reasonable attorneys' fees to a prevailing party.

80.     Without discovery, Channel One is unable to plead additional facts as to how satellite transmissions are being intercepted, decrypted, and routed to STBs.  However, upon information and belief, Defendants rely on Infomir's affiliates, including Apeiron Global, and other third parties within the Channel One Footprint to intercept satellite or cable communications on their behalf.

**ALLEGATIONS RELATED TO DEFENDANTS STREAMING ACTIVITIES**

81.     With the intent of willfully profiting from the unauthorized distribution and publication of intercepted satellite communications and copyright content, Rudik uses the other Defendants as vehicles to purchase a pirated signal, likely from an Infomir affiliated source in Estonia or Ukraine, process and store the pirated signal, purchase customized Infomir brand STBs, and create a misleading entity and website that suggests the pirated Programming has been legitimately licensed to RTV.

82.     For purposes of clarity, all unauthorized streaming of the Programming alleged herein, upon information and belief, consists of data from intercepted "over the air" satellite communications belonging exclusively to Channel One, upon information and belief, through a process substantially illustrated below.  In the illustration below, Defendant Rudik deploys various corporate entities under their control to provide "access management" and billing to U.S. consumers using Stalker middleware and processed content via aura software. The illustration when read clockwise shows how the Defendants obtain, process, transmit, bill and ultimately profit from their piracy using Infomir-provided systems and devices.

**Satellite Transmission Interception**



83.     It is believed that either the Defendants (or the Defendant's agent sued herein as John Doe) uses a form of de-encryption to access satellite broadcasts of the Programming in the Footprint of the respective satellite (for example, Estonia or Ukraine) as a first step in delivering the illegal streaming services. (ECF 76-6).

84.     Apeiron Global is located in Tallinn, Estonia, within the satellite footprint of Channel One. Attached hereto as **Exhibit 20** is an Estonian business registry record for Apeiron Global translated into English.

85.     Invoices provided by Rudik show that Techstudio pays Apeiron Global, approximately $10,000/month for data transfer. *See* Exhibit 14.

86.     Upon information and belief, the purported "data transfer" Techstudio purchases from Apeiron Global relates to a pirated signal that is captured from a satellite broadcasting Channel One to Estonia or a cable system service. Only Rudik knows whether Apeiron Global, Infomir, or other John Does are the source of pirated Channel One Programming.

**Reception and Transcoding**

87.     As a second step, upon information and belief, under Rudik's supervision, Techstudio and Servernaya or their agents use sophisticated digital recorders to transcode into digital data to be transmitted via the Internet to servers leased by Techstudio and Servernaya. This is necessary because a satellite transmission cannot be transmitted via IPTV without digitization and compression.

**Content Delivery Networks**

88.     As a third step, upon information and belief, under Rudik's supervision, Techstudio and Servernaya provide unauthorized streaming services of the Programming to an internet protocol address via third party internet service providers from which they lease space for domain hosting, data transfer, and data storage.

89.     Streaming media servers are hosted and run by large content delivery networks ("CDNs"). Upon information and belief, Techstudio or Servernaya lease space on CDNs to deliver pirated Channel One Programming to RTV subscribers. The Programming is subsequently transferred to RTV subscribers at RTV's direction using Infomir technology under Rudik's supervision.

90.     One such CDN, XO Communications LLC, hosts domains for the Defendants and related ethnic IPTV domains controlled by Rudik. Attached hereto as **Exhibit 21** is a domain listing of domains associated with XO Communications, LLC. The websites for the Defendants and related ethnic IPTV domains are hosted on the servers of XO Communications LLC. *See* Exhibit 21.

91.     Under Rudik's supervision, the Defendants use the domains hosted on XO Communications LLC's servers and the servers of John Does to store and transmit pirated IPTV. Without more discovery, Channel One is unable to identify all the CDNs like XO

Communications LLC receive unauthorized video data for the Techstudio and Servernaya to transmit to RTV's subscribers.

**Middleware and Billing**

92.     Upon information and belief, the alfabox IPTV middleware and billing software suite is Stalker that has been configured by Infomir at Rudik's request.  The customized Stalker is located on a server operated by Techstudio and Servernaya .

93.     The Stalker used by the Defendants  has been customized by Infomir to include the branding and user interface of RTV so that a consumer can seamlessly visit Channel One content on a drop down menu showing an electronic programming guide.

94.     The code on the "Aura" software the operates the Alfabox, shows Infomir wrote the code that enables the reception of pirated programming and that interacts with Stalker Middleware. *See* **Exhibit 22.** Upon information and belief, the same "Aura" software exists in RTV's STBs and firmware bootstraps RTV provides online.

https://help.russiantvcompany.com/how-to-re-install-firmware-on-alfabox-ux2/

95.     At Rudik's request, Infomir customizes the alfabox and MAG STBs to make them "plug and play" ready for subscribers of RTV.  Infomir does this by installing coding, or firmware, on the alfabox and MAG STBs that creates a user interface for consumers to operate the devices and connects the devices to data servers from which the devices receive an IPTV transmission. *See* Exhibit 22.

96.     Upon information and belief, Stalker is the mechanism through which IPTV subscribers are billed by gathering data on usage and automating payments.  Stalker also grants conditional access to the pirated Channel One programming based on timely payments by subscribers.

97.     Stalker interacts with the firmware Infomir preinstalls on STBs sold to
Techstudio, by controlling the IPTV transmission the STBs receive from servers leased by
Techstudio and Servernaya.

98.     Using the alfabox or other Infomir brand STBs, RTV subscribers pay monthly
fees to RTV to launch a browser that first contacts Stalker servers, which, in turn issue an
authorization permitting an RTV subscriber to access a streaming media server controlled by
Techstudio or Servernaya.

99.     Under Rudik's direction, Techstudio, and RTV accept electronic or telephone
payments.  Upon information and belief, bank transfer, MasterCard, VISA, Discover, American
Express, PayPal, Square, Inc., Transferwise and Payoneer are among RTV's most commonly
accepted payment methods.

100.     Upon information and belief, under Rudik's direction, the Techstudio, and RTV
use affiliates or similar corporations, sued as John Does herein, with different names to process
payments received from the U.S.

101.     When a U.S. consumer makes a payment to Techstudio, RTV and, the consumer
is typically invited to download an IPTV player or purchase an STB that permits end-user
consumers to bypass the Broadcaster's encryption to view the Programming.

102.     Rudik sells STBs, like the customized alfabox and MAG STBs, to consumers
online at www.russiantvcompany.com (the Website") or in person at sales centers at 1404
Avenue Z, Brooklyn, New York 11235.

103.     Upon information and belief, Stalker generates advertisements or work in
conjunction with software that generates advertisements to IPTV subscribers.  The revenues
from the advertisements are distributed to advertisers, Defendants, and Infomir by Stalker or
software that works in conjunction with Stalker to distribute advertising revenues.

22

104.   Therefore, Stalker promotes and exploits piracy of Channel One programming.

105.   Upon information and belief, the Defendants  and Infomir Defendants profit from this advertising.

**Unauthorized Distribution to RTV Subscribers**

106.   As a fourth step, RTV sells passwords and monthly subscriptions that permit individual consumers to use Infomir software to access internet protocol addresses from which the consumers can view Channel One Programming without permission from Channel One in this judicial district.

107.   A consumer using the IPTV software (browser) on STBs or downloaded from the Website may also use password provided by RTV to access a unique Internet Protocol ("IP") address, like htttp://alfaportal.iptvsys.com, from which the consumer can access a stream of the Programming provided by the Defendants through a CDN using Infomir software.  Attached hereto as **Exhibit 23** is a domain listing for the CDN XO Communications, LLC showing the Programming domain http://alfaportal.iptvsys.com being hosted on the servers of XO Communications, LLC.

108.   According to RTV's Website, subscribers retain access to two weeks of Programming. *See* **Exhibit 24** attached hereto.

109.   Techstudio and RTV market access to the Programming to U.S. consumers within this judicial district for a monthly fee.

110.   Rudik supervises, the branding and other advertising for RTV and Techstudio.

111.   Under Rudik's supervision, RTV misleads consumers by making it appear that it has the right to rebroadcast Channel One Programming by displaying Channel One's trademarks.

**Methods of Unauthorized Distribution of Channel One Programming**

112.    RTV's subscribers may view the Programming on the alfabox, Infomir brand MAG STBs, desktop computers, smartphones, tablets, and Smart TV apps available on the Samsung App Store.   Attached hereto as **Exhibit 25** are screenshots of Channel One's content being broadcast through an STB sold by RTV.

113.    Infomir and its affiliates manufacture, customize and distribute Infomir brand STBs for Defendants that are designed to display the pirated programming.

114.    At Rudik's request, Infomir customizes and sell approximately 35,000 STBs capable of "plug and play" functionality to Techstudio.   *See* **Exhibit 26** and **Exhibit 27** attached hereto.   Upon information and belief, Infomir customizes STBs for other unlicensed broadcasters.

115.    Infomir Ordered 3,000 customized MAG 256 STBs for $159,900.00 on March 24, 2017 from Progressive Tech.   *See* Exhibit 26.

116.    Upon information and belief, the alfabox was manufactured by Teletec on March 22, 2017, two days before Progressive Tech shipped Infomir 3,000 customized MAG 256 STBs. *See* Exhibit 26.

117.    The alfabox is a MAG 256 STB customized by Infomir to enable plug and play access to Channel One Programming via the "Aura" Software.   *See* **Exhibit 28** attached hereto.

118.    The Media Access Control ("MAC") address for the alfabox identifies Teletec as the manufacturer.   *Cf.* **Exhibit 28** to **Exhibit 29** a screenshot of a macvendors.com search for 00:1A:79:48:09:D2.

119.    A MAC address is hardwired or hard-coded onto the STBs network interface card and is unique to it.   MAC addresses never change, as opposed to an IP address, which can change. A MAC provides a reliable way to identify senders and receivers of data on a network.

120. The STBs customized by Infomir and sold to infringers like Techstudio are designed primarily to facilitate piracy of the Programming and are capable of streaming Russian language Programming from Channel One simply by connecting the STB to a device like a television or projector screen.

## ALLEGATIONS SPECIFIC TO RUDIK'S KNOWLEDGE OF AND MATERIAL CONTRIBUTION TO THE INFRINGING ACTIVITY HIS CO-DEFENDANTS

121. Rudik's businesses are vertically integrated to control the entire process of Channel One Programming transmission from the impermissible capture of the Programming to the unauthorized distribution of the Programming to subscribers as IPTV.

122. Rudik directs all of the foregoing acts of RTV, Techstudio, and Servernaya while knowing RTV has no authority to sell subscriptions and store copyrighted Channel One programming on servers, Techstudio has no authority to obtain programming from Aperion Globalor purchase pre-programmed alfabox STBs that distribute the programming and Servernaya has no authority to process and retransmit Channel One Programming.

123. Rudik regularly moves monies obtained from unauthorized streaming in and out of his personal bank account and the corporate bank accounts of RTV, Techstudio, and Servernaya..

124. Rudik also controls and uses non-party ESTIDesign, to collect payments for the unauthorized distribution of Channel One Programming by RTV.

125. Upon information and belief, Rudik is using ESTIDesign and other John Does to hide monies obtained from the unauthorized streaming he directs.

126. Upon information and belief, Rudik will continue to create new corporations to try to hid infringement proceeds , unless personally enjoined.

**The Need to Disable Defendants  Domains and Portals To Stop Irreparable Harm to Channel One**

127.    The Defendants ' unauthorized streaming may derive from data stolen from a cable system in violation of 47 U.S.C. §553, but in the absence of discovery, Channel One is unable to verify this and currently believe that the most likely source of pirated Programming is satellite transmissions as illustrated above.

128.    Upon information and belief, IP addresses and the streaming services are administered and maintained by Defendants together with John Does who are contributing to the infringements described herein.

129.    Defendants ' streaming has irreparably harmed and diminished the value of Channel One Programming because subscribers of RTV may obtain Channel One Programming for a substantially lower cost.

130.    Channel One is further irreparably harmed because subscribers of RTV are also confused because the name "Russian TV Company" suggests it is a legitimate provider of Channel One and other Russian programs.

131.    Channel One's irreparable harm is manifest. Defendants  are parasitic on the legitimate outlets for Russian-language broadcasts.  Having subscribed to the illicit broadcasts, customers are unlikely to simultaneously subscribe to the legitimate ones.  Once a certain month has passed, there is no way to restore demand for a legitimate subscription for that month.

132.    Channel One has a limited time period to exploit its live Programming and RTV's ongoing 24 Hour piracy of the Programming depletes the value of the Programming every second of every day RTV continues to broadcast Channel One.

133.    Channel One's licensees have demanded lower licensing fees because of the piracy of unlicensed broadcasters like Defendants .

134.    Defendants copy and store intercepted Channel One Programming that it may resell, effectively eliminating Channel One's ability to control its copyrighted Programming.

135.    RTV's streaming has diminished advertising revenue in two ways. First, Channel One cannot provide viewership data to advertisers to calculate advertising rates. Second, Channel One loses advertising revenue when the Defendants insert unauthorized advertisements into commercial breaks in the Programming.

136.    Defendant's copyright infringement is harming Channel One's reputation and brand because RTV is a lower quality service. In particular, inserting the ads associates Channel One with unauthorized advertisers.

137.    The alfabox and Infomir brand MAG STBs lack restrictions so subscribers of RTV may redistribute pirated Programming from RTV to other secondary infringers. This chain of infringement is impossible to calculate.

138.    Channel One cannot measure the damages to its brand, lost consumers, lost licenses, lost advertising revenue, and the complete loss of control of its copyrighted material.

139.    RTV is now distributing software on its Website that allows subscribers to download Aura software onto a blank STB that enables access to RTV's pirated Programming. Upon information and belief, this is a scheme to enable subscribers to obtain access to the Programming even if this court blocks the importation of plug and play STBs like alfabox.

140.    Money damages alone cannot remedy these harms. Therefore, Defendants streaming service inflicts irreparable harm on Channel One every second of every day that the streaming service remains in operation.

141.    Moreover, the customers obtain their illicit access to the Programming through the Website and its domain names. To the extent that any Defendant has "goodwill" in its

domain name, that asset has been acquired through an illegal business – selling unauthorized access to the Programming and that "goodwill" asset is therefore an illicitly gained one.

142.    Rudik also moves money among the accounts of Defendants, including his own. Upon information and belief he will render any Defendant judgment proof if Channel One is awarded damages for violations of the Copyright Act or FCA.

143.    For these reasons, Channel One requests that the Court order Defendants , or if necessary their domain registrar, to disable their domain names hosting the Website and place any domain names under a registry hold rendering them nontransferable pending the outcome of this litigation.

144.    Channel One requests that the Court order such domain names be transferred to Channel One.  Such an outcome is fair and equitable because these domains are dedicated entirely to infringing the Programming and thus have no legitimate "blue sky" from which the Defendants should be permitted to profit.

145.    Unless restrained by this Court, Defendants ' actions will continue to cause irreparable harm resulting from Channel One's loss of control over the distribution of Channel one's Channels and Programming, the preemption of Channel One's opportunities to license content over new media, advertising and the continued unlawful conduct contemplated by Defendants threatens Channel One with substantial irremediable losses.

### THE CHANNELS AND PROGRAMMING ARE SUBJECT TO PROTECTION PURSUANT TO THE COMMUNICATIONS ACT

146.    Channel One is an "aggrieved party" within the meaning of Section 605(d) of the Federal Communication Act because the Website's unauthorized streaming violates Channel One's proprietary rights in the initial transmissions of the Channels and Programming, as well as

28

violating Channel One's proprietary rights in Channel One's capacities as wholesale and retail distributors of the transmissions. 42 U.S.C. § 605(d).

147.    Section 605(a) of the Federal Communication Act forbids unauthorized rebroadcasts in the United States of foreign satellite transmissions. 42 U.S.C. § 605(d).

148.    Section 605(a) of the Communications Act expressly provides that the Act's protections extend to any "foreign communication" that is sent from or received in the United States.

149.    The Programming is broadcast into the United States from the Russian Federation in the first instance.

150.    Therefore, the Programming and Channels are "foreign communications" subject to protection under the Communications Act.

151.    Channel One's broadcasts are initially transmitted as "radio communications" within the meaning of the FCA in that they originate as satellite transmissions. *See* **Exhibit 30** (a representative summary of each of Channel One's channels and the satellites through which their broadcasts are transmitted).

152.    Such satellite transmissions are intended for receipt by local distributors' "head-ends", which are then distributed to authorized recipients by the Programming downstream of the satellite transmission. On information and belief, Defendants obtain access to the decrypted signals either directly or by agreement with Apeiron Global, Infomir and other John Does located abroad.   Defendants receive the Programming knowing that such Broadcasts have been illegally intercepted downstream of a satellite transmission.

153.    On information and belief, Defendants decrypt broadcasts by either "user cards" or "operator cards" which are hardware designed to decrypt Channel One's signals. User cards allow for the decryption of one channel and are designed to be used by the retail subscribers in

29

Russia or Russia's near-abroad.  Operator cards are intended for use by local cable operators and allow for the decryption of multiple channels.

## THE CHANNELS AND PROGRAMMING ARE SUBJECT TO PROTECTION PURSUANT TO THE BERNE AND PARIS CONVENTIONS

### A.   Channel One Has Standing Under The Copyright Act Pursuant To The Berne Convention

154.   Both the United States and the Russian Federation are signatories to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"").[1]

155.   Pursuant to the terms of the Berne Convention and the implementing statutes in the signatory countries thereto, each signatory country is obligated to afford the same protection under its copyright laws to a work originating in another of the signatory countries as it would to a work originating within that country.  Thus, each signatory country of the Berne Convention is obligated to recognize and enforce Channel One's copyrights in the Channels and Programming as they would if the Channels and Programming had originated in that country.  The United States Supreme Court has consistently upheld the Berne Convention and indicated the strong public policy behind the United States accession into it.  *Golan v. Holder*, 33 ITRD 1769, 132 S. Ct. 873, 878, 181 L. Ed. 2d 835 (2012).[2]

156.   The Programming constitutes Berne Convention works as defined in the Copyright Act, Title 17 U.S.C., § 101, as amended, and is subject to the protection of the

---

[1] The Berne Convention came into force in the United States on March 1, 1989 and in the Russian Federation on March 13, 1995.  *See* http://www.wipo.int/treaties/en/ShowResults.jsp?treaty_id=15 (last accessed November 4 2015).

[2] "Members of the Berne Union agree to treat authors from other member countries as well as they treat their own. Berne Convention, Sept. 9, 1886, as revised at Stockholm on July 14, 1967, Art. 1, 5(1), 828 U.N.T.S. 221, 225, 231–233.  Nationals of a member country, as well as any author who publishes in one of Berne's 164 member states, thus enjoy copyright protection in nations across the globe.  Art. 2(6), 3.  Each country, moreover, must afford at least the minimum level of protection specified by Berne.  The copyright term must span the author's lifetime, plus at least 50 additional years, whether or not the author has complied with a member state's legal formalities.  Art. 5(2), 7(1).  And, as relevant here, a work must be protected abroad unless its copyright term has expired in either the country where protection is claimed or the country of origin.  Art. 18(1)–(2)."

Copyright Act of 1976, Title 17 U.S.C. §§ 101 et seq.  This is because the Berne Convention extends to cinematic works.  (Art. 2(1)).

157.   Subject to limited exceptions, the Programming relevant hereto is produced and broadcast in the first instance Russian Federation, and therefore registration of the Programming with the United States Copyright Office is not required for Channel One to assert claims in this Court.  *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.,* 153 F.3d 82, 90 (2d Cir. 1998); *Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 474 (E.D.N.Y. 2009).

158.   Additionally, Channel One's Channels and Programming are protected by the intellectual property laws of the Russian Federation and are therefore entitled to the protection of United States copyright and trademark laws pursuant to international conventions, including Russian "neighboring rights" in the Programming which protects the selection and arrangement of the programming, in addition to any underlying copyrighted works within the Programming.

159.   Attached hereto as **Exhibit 31** is a true and correct translation of Articles 1329, 1330, 1331, and 1332 of the Civil Code of the Russian Federation ("Civil Code").

160.   Article 1332 of the Civil Code provides that all broadcasts that originate in the Russian Federation are protected by Russian law.

161.   Russian law protects neighboring rights which, as relevant here, are the rights a broadcaster has in its broadcasts including the rights to re-broadcast its broadcasts.  *See* Art. 1330.2 of the Civil Code which protects a broadcaster's right to record; reproduce; distribute; and re-transmit its original broadcast.

162.   Russian law does not require any formalities, such as registration, for a broadcaster to exercise neighboring rights.

163.   Because the alleged infringement is occurring in the United States, domestic law applies to Channel One's infringement claims.  *Dish Network L.L.C. v. TV Net Solutions, LLC,*

No. 6:12-CV-1629-ORL-41, 2014 WL 6685351, at *3 (M.D. Fla. Nov. 25, 2014) *citing Itar-Tass.*

164.    The Court may issue preliminary and permanent injunctive relief to stop illegal transmission of Berne Convention works over IPTV.  *WPIX, Inc. v. ivi, Inc.,* 765 F. Supp. 2d 594 (S.D.N.Y. 2011) *aff'd*, 691 F.3d 275 (2d Cir. 2012) *lv. denied* 133 S. Ct. 1585, 185 L. Ed. 2d 607 (2013).

165.    Defendants then download, copy or otherwise utilize Channel One's encrypted signals and rebroadcast and/or store them via equipment, including  computer servers, located in the United States.

## CAUSES OF ACTION

### COUNT ONE
### UNAUTHORIZED PUBLICATION OR COMMUNICATION UNDER THE FEDERAL COMMUNICATIONS ACT

166.    Channel One hereby re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

167.    Channel One owns the rights to, among other things, broadcast, re-broadcast, market and distribute within the United States and elsewhere their encrypted Programming which are currently de-encrypted and distributed through the Website and software distributed by Defendants.

168.    Channel One's Programming is encrypted by Channel One or only available to parties with "big satellite dishes."  Only authorized viewers may lawfully access the Programming.  The Programming is not viewable via IPTV without encoding, compressing and processing.

169.    Channel One licenses the rights to broadcast and re-broadcast their programs to certain third parties in exchange for a fee.  None of the Defendants  are licensed by Channel One to broadcast or re-broadcast the Program.

**(AGAINST SR EXPRESS CONSULTING INC. DBA TECHSTUDIO)**

170.    S.R. Express Consulting Inc. d/b/a Techstudio intercepts Channel One's broadcasts downstream of the satellite transmission.

171.    Upon information and belief, Techstudio pays Apeiron Global and other John Does to obtain a pirated satellite signal.  Upon information and belief, Apeiron Global works with Infomir's Estonian affiliate, Infomir OU, to obtain the pirated signal.

172.    After obtaining the signal, Techstudio compresses and transcodes the Programming for distribution and storage on CDNs that it leases in the United States.

173.    Techstudio has not received a license from Channel One to de-encrypt, compress, transmit the Programming, nor has it received any other permission, express or otherwise, to do so.  Through its association with RTV, Techstudio has and continues to intentionally pirate, compress, retransmit and publish Channel One's Programming for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

174.    The foregoing willful and intentional actions of Techstudio constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

175.    Without the express permission of Channel One, Techstudio is knowingly receiving, transmitting or assisting in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

**(AGAINST SERVERNAYA INC.)**

176.    Servernaya, in concert with Techstudio, intercepts Channel One's broadcasts downstream of the satellite transmission.

177.    Upon information and belief, Servernaya encodes, compresses and stores the Programming on CDNs and servers within New York for redistribution in this district.

178.    Servernaya has not received a license from Channel One to de-encrypt, compress, transmit the Programming, nor has it received any other permission, express or otherwise, to do so.  Through its association with RTV, Servernaya has and continues to intentionally pirate, compress, retransmit and publish Channel One's Programming for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

179.    The foregoing willful and intentional actions of Servernaya constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

180.    Without the express permission of Channel One, Servernaya is knowingly receiving, transmitting or assisting in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

**(AGAINST RUSSIAN TV COMPANY, INC.)**

181.    RTV advertises itself as a legitimate source of Channel One Programming.

182.    RTV sells subscriptions to its website and pre-loaded STBs called the alfabox that facilitate unauthorized access to Channel One Programming.

183.    Between 2013 and the present RTV has distributed approximately 35,000 STBs customized by Infomir to access Channel One's programming without a license.  Upon information and belief, RTV has distributed more than 35,000 STBs customized for piracy.

184.    In addition to these 35,000 subscribers that use an STB, RTV also has sold subscriptions to users that view pirated content on web browsers, SMART TVs, phones and tablets.

185.    Subscribers of RTV may view content on up to three devices.

186.    RTV has not received a license from Channel One to de-encrypt, broadcast or re-broadcast its programs, nor has it received any other permission, express or otherwise, to do so. Through the Website, RTVs continue to intentionally pirate, retransmit and publish Channel One's programs for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

187.    The foregoing willful and intentional actions of RTV constitutes the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

188.    Without the express permission of Channel One, RTV is  receiving, transmitting or assisting in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

## (AGAINST STEVEN RUDIK)

189.    Rudik exercises complete dominion and control of Techstudio, Servernaya, and RTV..

190.    There is an overlap in ownership, officers, directors and personnel among RTV, Techstudio, and Servernaya.

191.    Rudik does not observe corporate formalities for RTV, Techstudio, , or Servernaya.

192.    Rudik has not received a license from Channel One to de-encrypt, compress, broadcast or re-broadcast its programs, nor has it received any other permission, express or otherwise, to do so.  Through his ownership and direction of Techstudio, Servernaya, RTV, and, Rudik continues to intentionally pirate, retransmit and publish Channel One Programming for the sole purpose of his own economic gain and to the detriment of Channel One and its licensees.

193.    The foregoing willful and intentional actions of Rudik constitutes the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a), which is applicable to satellite and other cable communication pursuant to subparagraphs (b) – (e) of that section.

194.    Without the express permission of Channel One, Rudik controls entities that receive, transmit or assist in transmitting interstate foreign broadcast communications by wire or radio, causing said communications, their contents and substance to be divulged and published through unauthorized channels of transmission or reception.

195.    The foregoing willful and intentional actions by the Defendants  constitute the unauthorized publication or use of communications for commercial advantage in violation of 47 U.S.C. § 605(a).

196.     "Any person aggrieved by a violation of subsection (a) may bring a civil action for actual or statutory damages for each violation."  47 U.S.C. § 605(e)(3)(C).  "Any person aggrieved" includes "any person with proprietary rights in the intercepted communication."  47 U.S.C. § 605(b)(6).

197.    As a direct and proximate result of Defendants ' wrongful actions, Channel One has sustained and will continue to sustain damages and irreparable harm such that monetary, preliminary and permanent injunctive relief is warranted as authorized by 47 U.S.C. § 605(e) along with an award of any such other relief the Court deems just, proper and equitable.

198.    The Communications Act provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 USC § 605 (e)(3)(B)(iii). Accordingly, the Court should also award costs to Channel One, together  with reasonable attorneys' fees.

199.    Because the facts shows that Defendants  violated the FCA willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court should increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of the FCA as authorized by 47 U.S.C. § 605(e)(C)(i)(II)

**COUNT TWO**
**UNAUTHORIZED INTERCEPTION, RECEPTION, AND ASSISTANCE IN INTERCEPTING OR RECEIVING CABLE BROADCASTS IN VIOLATION OF 47 U.S.C. § 553**

200.    Channel One hereby re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

201.    Channel One alleges this Count Three in the alternative to Count One.

202.    Channel One owns the rights to, among other things, broadcast, re-broadcast, market and distribute within the United States and elsewhere their encrypted Programming which are currently de-encrypted and/or distributed through the Website and software distributed by Defendants .

203.    47 U.S.C. § 553 prohibits any unauthorized party from intercepting or receiving, or assisting in intercepting or receiving any communications service offered over a cable system.



204.    Assisting in intercepting or receiving under 47 U.S.C. § 553 includes "the manufacture or distribution of equipment intended by the manufacturer or distributor … for unauthorized reception" of said communications service.

205.    Congress has stated that 47 U.S.C. § 553 is "primarily aimed at preventing the manufacture and distribution of so-called 'black boxes' and other unauthorized converters which permit reception of cable service without paying for the service."

206.    Any person aggrieved by a violation of 47 U.S.C. § 553 may bring a civil action in a United States district court or in any other court of competent jurisdiction.

### (AGAINST SR EXPRESS CONSULTING INC. DBA TECHSTUDIO)

207.    Techstudio has not received a license from Channel One to de-encrypt broadcast or re-broadcast its programs, nor have they received any other permission, express or otherwise, to do so.

208.    Through the purchase and sale of the alfabox and other Infomir brand STBs, Techstudio has and continues to intentionally assist in intercepting and receiving Channel One's Programming and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and their licensees.

209.    Through the purchase and sale of an unauthorized stream from Apeiron Global, Techstudio has and continues to assist in intercepting and receiving Channel One's programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and their licensees.

210.    Through the purchase and lease of equipment, including servers, content delivery networks, and other equipment continues to assist in intercepting and receiving Channel One's

programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

211.   Techstudio's actions were committed willfully and for purposes of commercial advantage or private financial gain in violation of 47 U.S.C. § 553(c)(3)(B).

212.   By reason of the aforementioned conduct, Techstudio has willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

### (AGAINST SERVERNAYA INC.)

213.   Servernaya has not received a license from Channel One to de-encrypt broadcast or re-broadcast its Programming, nor has it received any other permission, express or otherwise, to do so.

214.   Upon information and belief, Servernaya in concert with Techstudio, leases equipment, including servers, content delivery networks, and other equipment used to compress, process, and store the pirated signal obtained by Techstudio.

215.   Through the purchase and lease of equipment, including servers, content delivery networks, and other equipment continues to assist in intercepting and receiving Channel One's programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

216.   Servernaya's actions were committed willfully and for purposes of commercial advantage or private financial gain in violation of 47 U.S.C. § 553(c)(3)(B).

217.   By reason of the aforementioned conduct, Servernaya  has willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

### (AGAINST RUSSIAN TV COMPANY, INC.)

218.    RTV has not received a license from Channel One to de-encrypt broadcast or re-broadcast its Programming, nor have they received any other permission, express or otherwise, to do so.

219.    Through the Website, RTV continues to assist in intercepting and receiving Channel One's programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and their licensees.

220.    Through the customization and distribution of the alfabox and other Infomir brand STBs, RTV continues to assist in intercepting and receiving Channel One's programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and their licensees.

221.    Without the express permission of Channel One, RTV continues to assist in intercepting and receiving Channel One's programs and causing their contents and substance to be divulged and published through unauthorized channels of transmission or reception for the sole purpose of its own economic gain and to the detriment of Channel One and its licensees.

222.    RTV's actions were committed willfully and for purposes of commercial advantage or private financial gain in violation of 47 U.S.C. § 553(c)(3)(B).

223.    By reason of the aforementioned conduct, RTV willfully violated 47 U.S.C. §553, thereby giving rise to a private right of action.

**(AGAINST STEVEN RUDIK)**

224.    Rudik is the owner and exercises complete dominion and control of Techstudio, Servernaya, , and RTV.

225.    There is an overlap in ownership, officers, directors and personnel among RTV,

Techstudio, and Servernaya.

226.    Rudik does not observe corporate formalities for RTV, Techstudio, or Servernaya.

227.    Without the express permission of Channel One, Rudik continues to assist in

intercepting and receiving Channel One's programs and causing their contents and substance to

be divulged and published through unauthorized channels of transmission or reception for the

sole purpose of his own economic gain and to the detriment of Channel One and its licensees.

228.    Rudik's actions were committed willfully and for purposes of commercial

advantage or private financial gain in violation of 47 U.S.C. § 553(c)(3)(B).

229.    By reason of the aforementioned conduct, Defendants  willfully violated 47

U.S.C. §553, thereby giving rise to a private right of action.

230.    As a direct and proximate result of the Defendants  wrongful actions, Channel

One has sustained and will continue to sustain damages and irreparable harm such that monetary,

preliminary and permanent injunctive relief is warranted as authorized by 47 U.S.C. § 553(C)(2).

231.    As a result of Defendants ' violation of 47 U.S.C. §553, Channel One is entitled

to damages in an amount, in the discretion of this Court, of up to the maximum amount of

statutory penalties, plus the recovery of full costs, interest and reasonable attorneys' fees.

232.    Without further Discovery from and/or admission by the Defendants, Channel

One cannot determine if Defendants  intercepted Channel One's signal via a cable system, in

violation of 47 U.S.C. §553, or via a satellite transmission, in violation of 47 U.S.C. §605. As

such, Channel One is alleging two (2) counts in its Complaint. Channel One recognizes that each

RTV Defendant can be liable for only (1) of these statutes.

233.    Because the facts shows that the Defendants intercepted a cable signal willfully

and for purposes of direct or indirect commercial advantage or private financial gain, the court

should award of damages by an amount of not more than $100,000 for each violation as

authorized by 47 U.S.C. § 553(b)(2)–(3).

## COUNT THREE
## SALES OF DEVICES PRIMARILY FOR THE USE OF OBTAINING ACCESS TO UNAUTHORIZED SATELLITE COMMUNICATIONS UNDER THE FEDERAL COMMUNICATIONS ACT

234.     Channel One hereby re-alleges each and every allegation of the foregoing

paragraphs as if fully set forth herein.

235.     47 U.S.C. § 605(e)(4) prohibits, inter alia, manufacture and distribution of an

electronic or mechanical device which is primarily of assistance in the unauthorized decryption

of satellite cable programming.

### (AGAINST SR EXPRESS CONSULTING DBA TECHSTUDIO)

236.     Techstudio is engaging in behavior prohibited by 47 U.S.C. § 605(e)(4) by its

distribution of Infomir brand STBs, including the customized alfabox.  The STBs are a "device

or equipment" that Techstudio knows or should know is "primarily of assistance in the

authorized decryption of satellite cable programming".

237.     Techstudio has customized and distributed approximately 35,000 STBs designed

to access Channel One's programming without a license.

238.     Techstudio provides customization specifications to Infomir for the operating

interface, branding, data sourcing and transfer, and advertisement capabilities that Techstudio

seeks to have built into its STBs.  The STBs are capable of "plug and play" functionality

enabling user to simply connect the device to a TV and begin watching content, like Channel

One Programming.  Therefore, the STBs are integral to the unauthorized piracy of Channel One

Programming.

239.   Techstudio, although unnecessary to transmission of Channel One Programming on its Infomir-purchased STBs, may also utilize software development kits downloaded from Infomir's website to create or modify the firmware on its STBs.

240.   Techstudio sells its customized STBs as Techstudio or RTV through the entities' identical retail location at 1404 Avenue Z, Brooklyn, New York 11235 or online.

### (AGAINST RUSSIAN TELEVISION COMPANY, INC.)

241.   RTV is engaging in behavior prohibited by 47 U.S.C. § 605(e)(4) by its sale and distribution of Infomir brand STBs, including the customized alfabox. The STBs are a "device or equipment" that the RTV knows or should know is "primarily of assistance in the authorized decryption of satellite cable programming" because RTV controls access to the STBs through firmware and passwords that enable infringing subscribers to use the STBs to view Channel One Programming.

242.   RTV has customized and sold to its subscribers approximately 35,000 STBs designed to access Channel One's Programming without a license.

243.   RTV also offers a password-protected software that enables subscribers to access content on a computer, tablet, phone, Smart TV or STB designed to access Channel One's programming without a license.

### (AGAINST STEVEN RUDIK)

244.   Rudik is the owner of Techstudio, and RTV and exercises complete dominion and control of the entities.

245.   There is an overlap in ownership, officers, directors and personnel among RTV, and Techstudio.

246.   Rudik does not observe corporate formalities for RTV, or Techstudio.

247.    Defendants , and Techstudio are engaging in behavior prohibited by 47 U.S.C. §

605(e)(4) by his sale and distribution of Infomir brand STBs, including the alfabox and

subscription access to the RTV media player on computers, Smart TVs, tablets, and phones.

248.    With respect to damages under the Federal Communications Act, 47 USC

§605(e)(4), the FCA provides the election between a special measure of actual damages and

statutory damages.  Broadcasters reserve the right to elect statutory damages as provided for

under 47 USC §605(e)(3)(C) *et seq*, namely, to seek $10,000 to $100,000 from the Defendants

as a result of each occurrence.


### COUNT FOUR
### COPYRIGHT INFRINGEMENT

249.    Channel One hereby incorporates and re-alleges each and every allegation of the

foregoing paragraphs as if fully set forth herein.

250.    The Berne Convention requires member states, including the United States, to

recognize the copyrights issued with respect to works created in other member states.

251.    Article 2 of the Berne Convention provides that the Berne Convention applies to

cinematic works.

252.    The Programming need not be registered with the United States Copyright Office

in order to be eligible for protection under the Copyright Act as applicable here through the

Berne Convention.

253.    Channel One (and/or its parents, subsidiaries, licensees or affiliates) is the legal or

beneficial owner of the copyrights in the Channels and Programming that have been or will be

distributed via encrypted satellite transmissions to be exhibited over broadcast or internet

television stations in the United States or abroad as well as through a variety of other media outlets.

254.    Article 1332 of the Civil Code provides that all broadcasts that originate in the Russian Federation are protected by Russian law.

255.    Russian law protects neighboring rights which, as relevant here, are the rights a broadcaster has in its broadcasts including the rights to re-broadcast its broadcasts. *See* Art. 1330.2 of the Civil Code which protects a broadcaster's right to record; reproduce; distribute; and re-transmit its original broadcast.

256.    Russian law does not require any formalities, such as registration, for a broadcaster to exercise neighboring rights.

257.    Each Program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

258.    Each Program has been created or licensed for exhibition by Channel One (and/or its parents, subsidiaries, licensees or affiliates), the transmissions of which Defendants are broadcasting or re-rebroadcasting by, among other methods, streaming them over IPTV, without authorization on the Website. Upon information and belief, Defendants have streamed and will continue to  stream, as part of their unauthorized service via their website and/or hardware, the Channels and Programming.

259.    Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Channel One owns the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

260.     Under Section 106 of the Copyright Act, 17 U.S.C. § 106, Channel One (and/or its parents, subsidiaries, licensees or affiliates) also owns the exclusive right to authorize others to exercise the rights set forth in the preceding paragraph 54.

261.     Under Section 501 of the Copyright Act, 17 U.S.C. § 501,  "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 is an infringer of the copyright"

### (AGAINST SR EXPRESS CONSULTING DBA TECHSTUDIO)

262.     Neither Channel One nor any other person or entity authorized by Channel One has granted any license, permission or authorization to Techstudio to exercise any of the rights as set forth in this Complaint or to authorize others to exercise such rights with respect to the copyrighted Programs or any other works in which Channel One (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

263.     Since 2015 Techstudio has obtained a signal containing copyrighted Channel One Programming from unauthorized providers, including Apeiron Global.

264.     Techstudio then stores the copyrighted Channel One programming on servers and CDNs for distribution to RTV subscribers in this district.

265.     In offering their infringing services, Techstudio has exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Channel One's exclusive rights set forth in this Complaint with respect to the Programming and other works in which Channel One (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

### (AGAINST SERVERNAYA INC)

266.     Since 2015, upon information and belief, Techstudio has paid Servernaya to encode, store, and process the copyrighted signal for transmission to CDNs in this district.

267.    In offering their infringing services, Servernaya has exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Channel One's exclusive rights set forth in this Complaint with respect to the Programming and other works in which Channel One (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

**(AGAINST RUSSIAN TELEVISION COMPANY, INC. )**

268.    Since 2015, RTV has received a pirated signal from Techstudio and Servernaya that contains Channel One's copyrighted Programming.

269.    RTV sells Channel One Programming as part of its Russian TV package to its subscribers for a monthly fee.

270.    RTV copies and stores copyrighted Channel One Programming on servers for up to two weeks. Upon information and belief, RTV pays Techstudio and Servernaya for this service.

271.    In offering their infringing services, RTV has exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Channel One's exclusive rights set forth in this Complaint with respect to the Programming and other works in which Channel One (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

**COUNT FIVE**
**SECONDARY COPYRIGHT INFRINGEMENT**

272.    Channel One hereby re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

273.    Federal common law imposes secondary liability on a party that has not directly infringed a copyright, but has played a significant role in direct infringement committed by others by, for instance, providing direct infringers with a product that enables infringement.



274.    Under the Copyright Act, a party that has the right and ability to supervise or control the infringing activity or has a direct financial benefit from that activity is vicariously liable for infringement.  A party is liable for contributory copyright infringement when it has knowledge of the infringing activity and materially contributes to the activity commits.

275.    Those who distribute infringement-enabling products or services may facilitate direct infringement on a massive scale, making it impossible to enforce copyright protection effectively against each individual John Doe infringer.

276.    This count is being pleaded in the alternative and in addition to direct copyright infringement.

**(AGAINST SR EXPRESS CONSULTING DBA TECHSTUDIO)**

277.    By obtaining, encoding, processing, and storing Channel One Programming distributed by RTV, Techstudio induces, contributes to, and is vicariously liable for any copyright infringement committed by RTV's infringing services.

278.    By obtaining, encoding, processing, and storing Channel One Programming obtained by Apeiron Global, Infomir, or another source of pirated programming, Techstudio induces, contributes to, and is vicariously liable for any copyright infringement committed by those infringing services.

279.    Defendants conduct is purposeful and actively encourages such infringement. Through these acts, Defendants induce and profit from copyright infringement.

280.    Techstudio vicariously infringes upon Channel One copyrights through its failure to supervise the activity taking place on their platforms.  Techstudio maintains control over the manner in which the pirated Channel One Programming is used and has declined to exercise the right and ability to supervise or control infringing activities.

48

**(AGAINST SERVERNAYA INC)**

281.    By encoding, processing, and storing Channel One Programming distributed by RTV, induce, contribute to, and are vicariously liable for any copyright infringement committed by RTV's infringing services.

282.    Accordingly, Servernaya is involved in the interception, decryption, or retransmission of broadcasts which they know to be intercepted or wrongfully decrypted.

283.    Servernaya vicariously infringes upon Channel One copyrights through its failure to supervise the activity taking place on their platforms.  Servernaya maintains control over the manner in which the pirated Channel One Programming is used and has declined to exercise the right and ability to supervise or control infringing activities.

**(AGAINST RUSSIAN TV COMPANY INC.)**

284.    By redistributing unauthorized and copyrighted Channel One Programming obtained by Techstudio, RTV induces, contributes to, and us vicariously liable for any copyright infringement committed by Techstudio's infringing services.

285.    Accordingly, RTV is involved in the interception, decryption, or retransmission of broadcasts which they know to be intercepted or wrongfully decrypted.

286.    Through the creation, maintenance and operation of its unauthorized Website and providing streaming services and credit card processing for www.russiantvcompany.com, RTV induce, contribute to, and are vicariously liable for any copyright infringement committed by its subscribers or other persons that are provided access to the RTV's infringing services.

287.    RTV also vicariously infringes upon Channel One copyrights through its failure to supervise the activity taking place on their platforms.  RTV maintains control over the manner in which its products, including its STBs and Website are used and has declined to exercise the right and ability to supervise or control infringing activities.

**(AGAINST STEVEN RUDIK )**

288.    Rudik exercises complete dominion and control over Techstudio, Servernaya, and RTV and is the moving force behind their infringing activities.

289.    Rudik has the right and ability to supervise the infringing activities of Techstudio, Servernaya, and RTV.

290.    Rudik has an obvious and direct financial interest in exploitation of copyrighted materials. Rudik directs RTV subscription fees to himself.

291.    Rudik personally participates in the infringing activity by, among other activities, negotiating agreements with Apeiron Global for an unauthorized signal and ordering alfaboxes from Infomir that are customized to receive that signal.

292.    In controlling the entities that offer these infringing services, Rudik has exercised and will exercise (or has authorized or will authorize others to exercise) one or more of Channel One's exclusive rights set forth in this Complaint with respect to the Programming and other works in which Channel One (and/or their parents, subsidiaries, licensees or affiliates) own copyrights.

293.    The Defendants  enjoy a direct financial benefit from the infringements that they contribute to, allow, and induct.

294.    The facts show that the Defendants  are liable under a theory of vicarious or contributory liability because they supervise the infringing acts, have a direct financial benefit, know the activity is infringing Channel One's rights and that their actions materially contribute to that activity.

295.    Accordingly, the Court should grant monetary damages, costs and injunctive relief along with any such other relief the Court deems just, proper, and equitable.

**COUNT SIX**



## DECLARATORY JUDGMENT
## (AGAINST DEFENDANTS)

296.    Channel One hereby re-alleges each and every allegation of the foregoing
paragraphs as if fully set forth herein.

297.    A case of actual controversy exists regarding Defendants' broadcasts or re-
broadcasts of Channel One's Channels and Programming that would be resolved through
declarative relief from this Court.

298.    Therefore, a judgment declaring Channel One's exclusive rights to distribute the
Programming and Channels in the United States is warranted pursuant to the Declaratory
Judgment Act 28 U.S.C. § 2201, *et. seq.*

### PRAYER FOR RELIEF

WHEREFORE, Channel One requests that the Court enter judgment in their favor and
against Defendants as follows:

A.    A declaration adjudging that Channel One owns all rights, titles and interests to
the Channels and Programming and that Defendants have no rights, title or interest to the
Channels and programming;

B.    An order permanently enjoining Defendants  and their officers, agents, servants,
and employees and all those in active concert or participation with them, including but not
limited to payment processors, from infringing upon Channel One's exclusive rights to the
Channels and Programming;

C.    An order permanently enjoining Defendants  from importing, marketing or selling
any device that is designed or utilized for the purposes of unlawfully accessing Channel One's
Channels and Programming

D.

51



E.      Pending the outcome of this litigation, an order permanently disabling the

Defendants ' Website, IP addresses, and portal used by Defendants, either directly or through the

appropriate domain registrar and a registry hold rendering such Website, IP addresses , and

portal nontransferable;

F.      A judgment awarding ownership of the RTV Website to Channel One;

G.      An award to Channel One of monetary damages, including, where applicable,

statutory damages, costs, together with reasonable attorneys' fees and prejudgment interest;

H.      An award to Channel One of exemplary damages;

I.      An award of any such other and further relief as the Court deems just, proper and

equitable.


Dated: New York, New York
       April 19, 2019

                                    DUNNINGTON, BARTHOLOW & MILLER LLP
                                    *Attorneys for Plaintiff*


                                    By: /s Raymond J. Dowd_____
                                        Raymond J. Dowd
                                        Samuel A. Blaustein
                                        Hardin P. Rowley
                                        230 Park Avenue, 21st Floor
                                        New York, New York 10169
                                        (212) 682-8811
                                        rdowd@dunnington.com
                                        sblaustein@dunnington.com
                                        hrowley@dunnington.com

## VERIFICATION

ALEXANDER SHPREKHER declares subject to penalties of perjury under the laws of the United States as follows:

1. I am the Deputy CEO and Head of Strategy and Business Development for Plaintiff Joint Stock Company "Channel One Russia Worldwide" (the "Company") in this action and authorized by the Company to execute this Verification.

2. With respect to the allegations made in the foregoing Amended Verified Complaint on behalf of the Company, I have read the foregoing Amended Verified Complaint with Exhibits, know the contents thereof and the same are true and correct to my personal knowledge, except where alleged upon information and belief, and with respect to those allegations, I believe them to be true.

3. The grounds of my belief as to all matters not stated to upon my personal knowledge are documents, papers and data contained in my own or the Company's business records pertaining to this matter.

4. The reason I make this Verification on behalf of the Company is that the Company is a foreign Joint Stock Company.

Joint Stock Company Channel One Russia Worldwide

By: _____
    Alexander Shprekher
    Deputy CEO and Head of Strategy and Business Development

Dated: April 18th ,2019
    Moscow, Russian Federation