UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
Joint Stock Company "Channel One Russia Worldwide,"

Index No.  18-CV-2318

                              Plaintiff,

          -against-


RUSSIAN TV COMPANY, INC., SR EXPRESS
CONSULTING INC. d/b/a TECHSTUDIO,
STEVEN RUDIK, SERVERNAYA INC.,
ESTIDESIGN INC., and John Does 1-10.

                              Defendants.
------------------------------------------------------------------------X




**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................1

FACTS ..............................................................................................................................4

ARGUMENT .....................................................................................................................5

SUMMARY JUDGMENT MOTION STANDARD .....................................................5

ARGUMENT .....................................................................................................................6

I.    Summary Judgment Is Warranted For Violations Of FCA Sections 605(a) Based On RTV Defendants' Undisputed Streaming Of The Programming To 1,800 Subscribers (First Cause of Action)...............................................................................................6

    A.  Channel One Has Established That RTV Defendants Unlawfully Rebroadcast Channel One's Content Without Permission By Selling Subscriptions (First Cause of Action)..........................................................................................................6

    B.  The Court Should Award Statutory Damages Under The FCA ...................................8

    C.  The Court Should Award Enhanced Damages Because RTV Defendants' Conduct Was Willful................................................................................................................8

    D.  The Court Should Make a 3,000 Award in Statutory Damages Under FCA 604(e)(4) Because Channel One Has Established That RTV Defendants, With The Knowledge That The Devices Would Be Used Primarily To Violate FCA Section 605(a) Unlawfully Imported And Selling  STBs and Permitted Consumers To Download Apps Configured To Access Channel One's Programming (Third Cause of Action) ....................................................................................................10

        A.  Although The Record Supports A Much Higher Calculation, The Court Should Make A Conservative 3,000 Awards of Statutory Damages For Undisputed Imports Of Customized Devices Under 605(e)(4) Based On RTV's Invoice...........................................................................................................11

        B.  The Court Should Make An Award of 200 Awards of FCA Section 604(e)(4) Damages Based On RTV Defendants' Creation and Permitting Consumers To Download Apps ..........................................................................13

II.   Defendant Rudik Is Individually Liable For The Conduct of RTV Defendants...............14

III.   The Court Should Grant Summary Judgment On RTV Defendants' Affirmative Defenses.......................................................................................................................15

A.  Summary Judgment Is Warranted On The First, Fourth And Sixth Affirmative Defenses Under The FCA Because The FCA Does Not Require Broadcasters To Own The Underlying Copyrights To Enjoy Protection From Unauthorized Retransmissions .............................................................................................16

B.  Summary Judgment Is Warranted on the Seventh, Eighth Ninth and Tenth Affirmative Defenses Because The FCA Imposes Strict Liability, Where, As Here, A Commercial Use Has Been Shown ...............................................................16

C.  Summary Judgment Is Warranted On The Third (Copyright Misuse) and Tenth (Damages Caused By Channel One's Own Conduct) Affirmative Defenses Because These Defenses Were Neither Pleaded Nor Proven .......................................17

D.  Summary Judgment Should Be Granted On RTV Defendants' Eleventh Affirmative Defense Of Obtaining A License Because None Of The RTV Defendants Had A License To Stream Channel One Programming............................19

E.  A Permanent Injunction And Declaratory Judgment Are Warranted..........................20

CONCLUSION....................................................................................................................21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bourne v. Walt Disney Co.*,
   68 F.3d 621 (2d Cir. 1995)........................................................................................19

*Burck v. Mars, Inc*.,
   571 F. Supp. 2d 446 (S.D.N.Y. 2008).......................................................................18

*CapLOC, LLC v. McCord*,
   No. 17 CIV. 5788 (AT), 2020 WL 1036044 (S.D.N.Y. Mar. 3, 2020) .......................5

*DISH Network, LLC v Henderson*,
   519CV1310MADATB, 2020 WL 2543045 (N.D.N.Y. May 19, 2020)....................... *passim*

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).........................................20

*Erickson Beamon Ltd. v. CMG Worldwide, Inc*.,
   No. 12 CIV. 5105 NRB, 2014 WL 395089 (S.D.N.Y. Aug. 13, 2014)....................17

*Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*,
   933 F. Supp. 2d 655 (S.D.N.Y. 2013)......................................................................20

*Garden City Boxing Club, Inc. v. Estien*,
   No. 05 Civ. 3687 (RJD), 2007 WL 841806 (E.D.N.Y. Feb. 9, 2007) (FCA).........20

*Garden City Boxing Club, Inc. v. Morales*,
   No. 05-CV-0064, 2005 WL 2476264 (E.D.N.Y. Oct. 5, 2005)...............................10

*GE Transportation (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*,
   No. 15 CIV. 6194 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016) ...............21

*Int'l Cablevision, Inc. v. Sykes*,
   75 F.3d 123 (2d Cir. 1996)..........................................................................................2

*J & J Sports Prods., Inc. v. Usman*,
   2019 WL 6777387 .................................................................................................7, 14

*J&J Sports Prods., Inc. v. Fantasy Bar & Rest. Corp.*,
   No. 17-CV-05355 (JGK) (DF), 2018 WL 5018065 (S.D.N.Y. Sept. 20, 2018), *report and
   recommendation adopted sub nom.*, 2018 WL 5016606 (S.D.N.Y. Oct. 15, 2018)................8

*Joe Hand Promotions, Inc. v. Gonzalez*,
   No. 19CV3881MKBSMG, 2020 WL 4587445 (E.D.N.Y. May 8, 2020)...........7, 14

*Joe Hand Promotions, Inc. v Maupin*,
    2016 WL 6459631 (E.D.N.Y. Oct. 31, 2016)..............................................................17

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
    No. 16-CV-1318(GBD)(BCM), 2019 WL 8955234 (S.D.N.Y. Oct. 25, 2019) .............. *passim*

*Kamakazi Music Corp. v. Robbins Music Corp.*,
    684 F.2d 228 (2d Cir.1982)........................................................................................19

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)..................................................................................15, 17

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
    928 F.3d 226 (2d Cir. 2019)........................................................................................20

*Leckie v. Robinson*,
    No. 17-CV-8727 (PGG)(BCM), 2020 WL 5238602 (S.D.N.Y. Feb. 6, 2020) *report and*
    *recommendation adopted sub nom.* No. 17CIV8727PGGBCM, 2020 WL 2114846 (S.D.N.Y.
    May 4, 2020)...............................................................................................................5

*Paramount Pictures Corp. v. Does*,
    No. 15-CV-5819, 2015 WL 10013786 (S.D.N.Y. Nov. 24, 2015)........................................21

*Petrella v Metro-Goldwyn-Mayer, Inc.*,
    572 US 663, 134 S Ct 1962, 188 L Ed 2d 979 (2014)...........................................................19

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010)..........................................................................................20

*Sohm v Scholastic Inc.*,
    959 F3d 39 (2d Cir. 2020)......................................................................................5, 19

*UMG Recordings, Inc. v. Lindor*,
    531 F. Supp. 2d 453 (E.D.N.Y. 2007) ..........................................................................18

*Yamashita v. Scholastic Inc.*,
    936 F.3d 98 (2d Cir. 2019)..........................................................................................19

**Statutes**

47 U.S.C. § 605(e)(3)......................................................................................................20

47 U.S.C. § 605(e)(4)................................................................................................ *passim*

47 U.S.C. § 605(e)(3)(B)(i)............................................................................................21

47 U.S.C. § 605(e)(3)(B)(iii)......................................................................................8, 20

47 U.S.C. § 605(e)(3)(C)(i)(II) ..................................................................................... *passim*

47 U.S.C. §§ 605(e)(3)(C)(ii) ...............................................................................................8

Copyright Act.............................................................................................................3, 15, 16, 20

Federal Communications Act, 47 U.S.C. §605................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 56(g) ................................................................................................................5

Fed. R. Civ. P. 12(f) ...............................................................................................................18

Fed. R. Civ. P. 56 ................................................................................................................1, 4

## INTRODUCTION

Plaintiff Joint Stock Company "Channel One Russia Worldwide" ("Channel One") moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for an Order granting partial summary judgment against Defendants Russian TV Company Inc. ("RTV"), SR Express Consulting Inc. d/b/a Techstudio ("Techstudio"), Steven Rudik ("Rudik"), Servernaya Inc. ("Servernaya"), Estidesign Inc. ("Estidesign")(collectively "RTV Defendants") for willful unauthorized retransmission of Channel One's satellite communications in violation of the Federal Communications Act, 47 U.S.C. §605 ("FCA"). This motion was authorized and is timely pursuant to the Court's August 24, 2020 Order (ECF 242). Under the direction of Rudik, RTV Defendants offer an internet protocol television service ("IPTV") video streaming service to U.S. consumers that offers subscriptions to over 200 television channels, including television channels owned by Channel One that are first broadcast via satellite only in the Russian Federation. Channel One has not authorized RTV Defendants to distribute or retransmit its programming.

Because the RTV Defendants have undisputedly received and retransmitted satellite-originated radio signals to third parties via IPTV without authorization and for financial gain in violation of FCA Section 605(a), RTV Defendants are liable for enhanced statutory damages for each of the 1,800 undisputed RTV subscribers from a minimum of $1,000 per subscriber to a maximum of $10,000 per subscriber. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318(GBD)(BCM), 2019 WL 8955234, at *10 (S.D.N.Y. Oct. 25, 2019), *report and recommendation adopted*, 2020 WL 1467098 (S.D.N.Y. Mar. 26, 2020) ("*Panorama*").

Because the RTV Defendants have also imported, sold and distributed 35,000 set-top boxes ("STB"s) customized to permit a U.S. consumer to plug in the STB and easily access Channel One's retransmitted satellite-originated radio signals via IPTV, RTV Defendants have violated

FCA 605(e)(4), which prohibits the import, sale or distribution of a "device or equipment" with knowledge that "the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming" or the retransmission of decrypted satellite transmissions. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2019 WL 8955234 at *11-12 (S.D.N.Y.)(BCM) *discussing Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131 (2d Cir. 1996). RTV Defendants have undisputedly imported 35,000 STBs.  Undisputed invoices show that at least 3,000 of the imported STBs were pre-customized to receive Channel One's retransmitted satellite transmissions.  RTV Defendants have admitted to 5,767 downloads of the RTV app but argue that only 200 have been used by RTV subscribers.   In light of this, Channel One seeks 3,200 awards of enhanced damages for undisputed violations of FCA 605(e)(4) ranging from a statutory minimum of $10,000 to a maximum of $100,000 under FCA Section 605 (e)(3)(C)(i)(II).

Channel One owns multiple Russian-language channels ("Channels" or "the Programming") and licenses exported versions of its copyright-protected Programming for distribution throughout the world, including the United States.  The Channels are transmitted in the first instance via satellite in Russia. Modified versions of the Programming are provided to other regions.  Notably, the Russian versions of Channel One available in the Commonwealth of Independent States ("CIS") may contain copyrighted content that Channel One does not have the right to broadcast in the United States.  Instead, a different version of Channel One Worldwide is available in the United States from authorized third-parties who have received licenses from Channel One, such as DirecTV, Xfinity and Kartina Digital GmbH ("Kartina TV").

Channel One's licensees protect the Programming through a variety of technical means that prevent an individual consumer in the United States from acquiring the Programming without an intermediary.  To receive the Programming legally, consumers must purchase access to

2

streamed content from licensed providers of internet protocol television ("IPTV") and other over the top ("OTT") services.  The Programming is originally transmitted by satellite and is therefore a "radio" communication for which Channel One is entitled to protection under the Federal Communications Act ("FCA").

Overseen by Rudik, RTV Defendants sell access to the Programming—and hundreds of other channels—as part of an IPTV service branded "Russian TV Company" by charging consumers for customized STBs sold from a storefront in Brooklyn that are marketed through a website www.russiantvcompany.com ("Website") and an App created by ESTIDesign that is available through the Google Play Store.  RTV Defendants have primarily used an STB branded as "alfabox" manufactured by non-party Infomir, LLC ("Infomir") preconfigured to easily access the Programming.  Under Rudik's direction, RTV bills consumers for subscriptions to provide the Programming via internet streaming.  Rudik directs Techstudio to illicitly acquire and store the Programming and to purchase STBs.  Rudik directs Servernaya to process and redistribute the Programming to subscribers via streaming from servers located in downtown Manhattan.

To prevail on its FCA claims, Channel One need not establish copyright ownership.  However, because this Court has already denied RTV Defendants' motion to dismiss and ruled that Channel One is entitled to the same copyright protections as those granted to U.S. authors under the Copyright Act, the Court should grant summary judgment dismissing RTV Defendant's first, fourth and sixth affirmative defenses claiming failure to state claims. (ECF 105 at 8).  Summary judgment should also be granted on the remaining affirmative defenses accusing Channel One of copyright misuse or inequitable behavior which are entirely conclusory and unsupported by plausibly-pleaded facts or record evidence.  Summary judgment should be granted on Rudik's claim that he had licenses to broadcast the Programming via a proprietary streaming

service.  Rudik started out as a licensed Kartina TV reseller.  This relationship permitted him to sell devices and access codes that permitted consumers to access a licensed bundle of television programs streamed by Kartina TV only.   Rudik then created RTV Defendants to secretly launch an illegal, unlicensed operation to avoid paying license fees to Kartina TV and Channel One. Rudik's purchase of access codes to Kartina TV --- a legitimate, licensed IPTV streaming service --- are entirely irrelevant to this action or to the unauthorized and unlicensed streaming activities of  Defendants RTV, Techstudio, Servernaya or Estidesign.  Access codes purchased by Rudik permitted consumers to access content streamed by Kartina TV only.  Neither Rudik nor any of the RTV Defendants ever had permission to stream any of Channel One's content to consumers. Because RTV Defendants have failed to plead and cannot prove the affirmative defense of a license, summary judgment is warranted.

Channel One elects to pursue statutory damages under the FCA. Because the RTV Defendants' conduct was willful and for commercial purposes from the beginning and continued during the multi-year pendency of this action, and because the RTV Defendants have failed to account for sales of the 35,000 imported STBs or to credibly account for over 5,000 downloads of the RTV App, the Court should exercise its discretion to make substantial enhanced statutory damages awards to generally deter piracy.  Because RTV Defendants have failed to account for their subscribers, likely to have insufficient assets to satisfy the judgment and are likely to seek to evade a monetary judgment, an order directing restraint and assignment of assets is warranted.

## FACTS

The relevant facts are set forth in the attached Rule 56 Statement, cited herein as R56 ¶ __ and incorporated herein by reference.

## ARGUMENT

## SUMMARY JUDGMENT MOTION STANDARD

"A court may grant a motion for summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Leckie v. Robinson*, No. 17-CV-8727 (PGG)(BCM), 2020 WL 5238602, at *6 (S.D.N.Y. Feb. 6, 2020) *report and recommendation adopted sub nom.* No. 17CIV8727PGGBCM, 2020 WL 2114846 (S.D.N.Y. May 4, 2020) *quoting* Fed. R. Civ. P. 56(a) *and citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (other citations omitted).  The Court may award partial summary judgment.  Fed. R. Civ. P. 56(g); *CapLOC, LLC v. McCord*, No. 17 CIV. 5788 (AT), 2020 WL 1036044 at *21 (S.D.N.Y. Mar. 3, 2020).

"The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact."  *Leckie citing* Fed. R. Civ. P. 56(c)(case citations omitted).  "If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact."  *Id. citing Celotex,* 477 U.S. at 322 (other citations omitted).  The existence of a license is an affirmative defense that the alleged infringer must plead and prove. *Sohm v Scholastic Inc.,* 959 F3d 39, 48 (2d Cir. 2020).

Statutory damages for violations of Section 605(e)(4) may be awarded in an amount ranging from $10,000 to $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). Statutory damages of $1,000 to $10,000 may be awarded for each violation of Section 605(a), subject to an increase to not more than $100,000 per violation if "the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C.. § 605(e)(3)(C)(i)(II).  Such damages may be awarded without conducting a hearing if the affidavits and documentary evidence provide a sufficient basis for the damages requested. *DISH Network,*

5

*LLC v Henderson*, 519CV1310MADATB, 2020 WL 2543045, at *6 (N.D.N.Y.  May 19, 2020)

*citing Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

I.   **Summary Judgment Is Warranted For Violations Of FCA Sections 605(a) Based On RTV Defendants' Undisputed Streaming Of The Programming To 1,800 Subscribers (First Cause of Action)**

Rudik testified to an RTV subscriber list of 1,964 subscribers to the RTV streaming service that includes the Programming owned by Channel One.  (R54 ¶62)  Channel One has testified that RTV Defendants have no license, and RTV Defendants have neither pleaded nor shown any evidence RTV Defendants have any license to stream Channel One's content.  Accordingly, the Court should grant summary judgment against Defendants for violations of Sections 605(a) of the FCA which prohibits the unauthorized interception, publication, and use of interstate or foreign radio communications including satellite communications.  47 U.S.C. § 605(a).

A.   **Channel One Has Established That RTV Defendants Unlawfully Rebroadcast Channel One's Content Without Permission By Selling Subscriptions (First Cause of Action)**

Rudik has testified that RTV Defendants have sold at least 1,964 subscriptions to its customers for purposes of unlawfully accessing Channel One's content.  (R56 ¶ 62). Each subscription permits unauthorized access and is a separate and distinct violation of Section 605(a) for which an award of statutory damages is warranted consistent with practice in the Second Circuit.  *Panorama,* 2019 WL 89955234 at 15.  Channel One is based in the Russian Federation and controls its Channels and Programming.  *Panorama,* 2019 WL 89955234 at at 1-2.  The Programming is first transmitted by satellite, encrypted and licensed to third parties in the United States and elsewhere for distribution,  *Panorama,* 2019 WL 89955234 at 1-2; (R56 ¶¶ 17, 18, 20, 21, 22, 23, 24).  The term "'radio communication,' as used in the FCA, has long been understood to include satellite transmissions.*" Panorama,* 2019 WL 89955234 at *10 (citations omitted).

The four sentences comprising Section 605(a) are analyzed independently.  *Panorama,* 2019 WL 89955234 at *10 ; *DISH Network, LLC v. Henderson*, No. 519CV1310MADATB, 2020 WL 2543045, at *4 (N.D.N.Y. May 19, 2020) (citations omitted).  Relevant here, the third sentence of Section 605(a) "prohibits 'receiv[ing] or assist[ing] in receiving' radio communications by a person 'not being entitled thereto ... for his own benefit or for the benefit of another not entitled thereto.'"  *Panorama,* 2019 WL 89955234 at *10. A defendant need not "intercept" a satellite communication for liability to attach under the third sentence of Section 605(a).  Instead, the factors to consider are (1) whether Channel One's content was first transmitted via satellite; (2) whether RTV Defendants had authority to re-transmit Channel One's content without authorization; and (3) whether RTV Defendants actually re-transmitted Channel One's content in exchange for consideration.  *Panorama*, 2019 WL 8955234, at *12 (S.D.N.Y. Oct. 25, 2019); *Joe Hand Promotions, Inc. v. Gonzalez*, No. 19CV3881MKBSMG, 2020 WL 4587445, at *2 (E.D.N.Y. May 8, 2020), *report and recommendation adopted,* 2020 WL 2781679 (E.D.N.Y. May 28, 2020).

Summary judgment is warranted because it is undisputed that Channel One originated the satellite communication and RTV Defendants re-transmitted it without authorization by streaming it to paying customers.  *J & J Sports Prods., Inc. v. Usman*, *supra* at *2, citing J & J Sports Prod., Inc. v. Leon*, 2019 WL 1320277, at *4 (E.D.N.Y. Mar. 22, 2019) (granting summary judgment) ("Because plaintiff owned the exclusive commercial distribution rights for the Program, it is impossible for defendants to have broadcast the Program legally without having entered into a licensing agreement with plaintiff.  It is undisputed that defendants did not enter into such an agreement, yet the Program was still displayed at the establishment on September 13, 2014.  These undisputed facts are sufficient to establish Red Mist's liability under Section 605").

As of August 20, 2020, RTV Defendants were still distributing Channel One programming. (R56 ¶ 59).

## B.  The Court Should Award Statutory Damages Under The FCA

Each subscriber qualifies as a separate violation of Section 605(a).  *Panorama,* 2019 WL 8955234 at *15.  The Court should award between $1,000 and $10,000 in statutory damages for each FCA Section 605(a) violation.  If the Court finds that the "violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain" the Court may add up to $100,000 in additional statutory damages for violations of Section 605(a).  47 U.S.C. §§ 605(e)(3)(C)(ii); Additionally, the FCA provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."  47 U.S.C. § 605(e)(3)(B)(iii).  *See Panorama,* 2019 WL 8955234 at 1.  RTV admits to having 1964 subscribers.  (R56 ¶ 63).  RTV profits from its piracy by charging between $7.99/week to $299.99/year for Basic, Plus, and Premium subscriptions levels.  (R56 ¶ 64).

Therefore, 1964 is a conservative estimate of violations because from 2015 to 2018 Rudik purchased 6,575 access codes just from Apeiron and Digital Services LLC.  (R56 ¶ 44).  Based upon the evidence in the record, the Court may award $1,964,000 to $19,640,000 for violations of FCA Section 605(a) only.

## C.  The Court Should Award Enhanced Damages Because RTV Defendants' Conduct Was Willful

"Courts use a variety of factors in determining whether a defendant's conduct is subject to enhanced damages for willfulness, such as allegations of: (1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks."  *J&J Sports Prods., Inc. v. Fantasy Bar*

*& Rest. Corp.,* No. 17-CV-05355 (JGK) (DF), 2018 WL 5018065, at *6 (S.D.N.Y. Sept. 20, 2018), *report and recommendation adopted sub nom.,* 2018 WL 5016606 (S.D.N.Y. Oct. 15, 2018) *quoting Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02cv07972 (SHS), 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003).  Here, RTV Defendants know and have known since Kartina TV blacklisted Rudik in February 2017 that RTV Defendants lack authority to broadcast Channel One Programming. (R56 ¶¶ 25, 32, 34). RTV has continued to broadcast Channel One from unauthorized sources. (R56 ¶¶ 56, 59, 61, 68, 69, 76, 77, 80, 86) (repeated evidence of unauthorized Channel One Programming). RTV Defendants have not paid a licensing fee for the unauthorized programming because RTV's admitted providers, Apeiron Global, Digital Services LLC, and Digital Security Networks LTD, are not and never were licensees of Channel One.  (R56 ¶¶ 37, 43). Kartina TV has not been authorized by Channel One since July 2019 to distribute Channel One Programming.   (R56 ¶ 33). Yet, RTV continues to distribute Channel One Programming through at least August 2020. (R56 ¶ 59).  RTV Defendants have earned at least $7 million from subscription fees from 2014 to 2017.  (R56 ¶) ($7 million in revenue from Paypal and Stripe 1099s).  Channel One has lost licensing and advertising revenue due to RTV's piracy. RTV Defendants advertise for the programming and the brand "Russian Television Company" suggests a legitimate IPTV provider, which RTV is not. (R56 ¶ 58) (RTV branding evokes Russian Flag and RTV advertises "Russian TV is one click away from you").

Rudik, prior to setting up the RTV service, purchased access codes to the Kartina TV service that offered licensed Channel One content.  (R56 ¶¶ 26-30, 32, 33). Because of this, Rudik knew that the lower costs of Apeiron Global and Digital Services indicated that they did not provide licensed content.  (R56 ¶ 34, 37, 40-43). Together these factors show the RTV Defendants willfully pirate Channel One Programming for profit and have no intention of stopping the

lucrative piracy.  Under similar circumstance, the Court previously awarded $2,000 in additional

damages per subscriber, which would be a fair exercise of discretion here based on the aggravated

circumstances of the RTV Defendants continued streaming despite the pendency of this lawsuit.

*Panorama,* 2019 WL 8955234 at 16.

> ### D.  The Court Should Make a 3,000 Award in Statutory Damages Under FCA 604(e)(4) Because Channel One Has Established That RTV Defendants, With The Knowledge That The Devices Would Be Used Primarily To Violate FCA Section 605(a) Unlawfully Imported And Selling  STBs and Permitted Consumers To Download Apps Configured To Access Channel One's Programming (Third Cause of Action)

The Court should also grant summary judgment against Defendants for violations of FCA

Section 605(e)(4) which prohibits the import, sale or distribution of a "device" or "equipment"

permitting consumers to access communications prohibited by FCA Section 605(a)  including pre-

configured STBs like the alfabox sold by RTV Defendants and the RTV Apps.  47 U.S.C. §

605(e)(4). *DISH Network, LLC v. Henderson,* No. 519CV1310MADATB, 2020 WL 2543045, at

*6 (N.D.N.Y. May 19, 2020).  Section 605(e)(4), which makes it unlawful to import, sell or

distribute "any electronic, mechanical, or other device or equipment, knowing or having reason to

know that the device or equipment is primarily of assistance in the unauthorized decryption of ...

direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)."

47 U.S.C. § 605(e)(4).

Section 605(e)(4) provides for a private right of action by "any person aggrieved" against

"upstream manufacturers and distributors, not the ultimate consumer of pirating devices." *Garden*

*City Boxing Club, Inc. v. Morales,* No. 05-CV-0064, 2005 WL 2476264, at *5 (E.D.N.Y. Oct. 5,

2005) (collecting cases).

> The Device Codes, which Defendants sold individually and preloaded onto a set-
> top box, were designed and produced for purposes of allowing access to the servers
> that support the Services, and thus are a "device" or "equipment" for purposes of

Section 605(e)(4). Based on these allegations, the Court finds that Plaintiffs have plausibly alleged that Defendants distributed modified equipment that was used in the unauthorized decryption of satellite cable programming. As such, Plaintiffs have established liability under Section 605(e)(4)

*DISH Network, LLC v. Henderson,* No. 519CV1310MADATB, 2020 WL 2543045, at *6 (N.D.N.Y. May 19, 2020) *citing DirecTV, Inc. v. Meinhart,* 158 Fed. Appx. 309, 311-12 (2d Cir. 2005) and collecting cases. Section 605(e)(4) of the FCA provides for an award of damages between $10,000 and $100,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). As argued in Point I (C) above, Channel One is entitled to enhanced statutory damages for each of these awards due to RTV Defendants' willful, continued commercial distribution of unlawful devices.

> ### A. Although The Record Supports A Much Higher Calculation, The Court Should Make A Conservative 3,000 Awards of Statutory Damages For Undisputed Imports Of Customized Devices Under 605(e)(4) Based On RTV's Invoice

RTV Defendants undisputedly imported 35,131 STBs and have failed to account for their sales under circumstances showing an overwhelming likelihood that the STBs were used for pirating the Programming. However, Channel One requests that the Court make only 3,000 awards of statutory damages based on the import of customized alfaboxes that RTV Defendants and non-party Infomir, LLC preconfigured for consumers to access the Programming with a "plug and play" menu.

Here, Channel One never authorized RTV Defendants or its signal providers, Apeiron Global or Digital Services, to distribute Channel One programming. (R56 ¶ 37). RTV Defendants rent collocation services and use transcoders to process and distribute the unauthorized signals distributed to customers. (R56 ¶¶ 45-55) (showing the purchase of equipment, content delivery, web hosting, and collocation services from Elantech, XO Communications, LLC, Cologuard, and Telex). These services and technology enable the transfer of illicit programming, including

11

Channel One Programming to RTV customers via the RTV Website, set-top boxes, computers, smartphones, tablets, and Smart TVs.  (R56 ¶ 65).

Rudik has produced records showing Techstudio purchased 35,131 MAG STBs from Infomir.  (R56 ¶ 74) (Infomir invoices from 2013 to 2018).  These invoices show RTV bought 7,680 MAG 250 STBs (R56 ¶ 66), 21, 750 MAG 254 STBs from Infomir (R56 ¶ 66), and 4,201 MAG 256 STBs from Infomir.  (R56 ¶ 66). RTV's private label for the MAG 250 was the alfabox UX1.  (R56 ¶ 66).  RTV's private label for the MAG 254 was the alfabox UX2.  (R56 ¶ 66).  RTV's private label for the MAG 256 was the alfabox UX3.  (R56 ¶ 66).  Channel One investigators have examined two alfabox UX2s that have shown that the alfabox is a preconfigured STB with pre-loaded software that provides direct consumer access to content through a pre-loaded menu.  (R56 ¶¶ 69, 76, 80, 81, 86).  This pre-configuration allows an RTV customer to view Channel One Programming simply by connecting the alfabox to a television or screen and selecting the RTV logo on the home screen.  (R56 ¶¶ 61, 70, 71, 77).  The logical conclusion is that Infomir and RTV Defendants customized at least 3,000 of the 35,131 MAG STBs (MAG 250, 254, 256) into private label alfaboxes (UX1, UX2, UX3) to be plug-and-play.  (R56 ¶¶ 69, 74, 76, 80, 86).  Additionally, and cumulatively confirming evidence of direct, undisputed evidence of at least 3,000 statutory violations is an invoice from Infomir and a Progressive Technology FZE shipping invoice from the United Arab Emirates identifying 3,000 of those MAG STBs as customized.  (R56 ¶ 75).

RTV Defendants advertise how a sophisticated customer can configure the RTV portal with an Infomir MAG STB.  (R56 ¶ 70-71).  So, the RTV Defendants know that Infomir MAG STBs and alfaboxes are used to distribute unauthorized Channel One Programming.  (R56 ¶¶ 66, 69).  Therefore, the 3,000 MAG 256 STBs customized by Infomir and RTV Defendants into plug-

12

and-play alfaboxes is a conservative estimate of the device violations because these 3,000 STBs represent a mere 8.5% of the STBs purchased from Infomir.

Channel One has provided undisputed evidence that the alfabox UX3 (customized MAG 256) displays Channel One Programming without authority, which overwhelmingly suggests additional violations. (R56 ¶¶ 56, 59, 61, 66, 68, 76, 77, 80, 83). Channel One believes 3,000 violations is an appropriate and conservative estimate of the number of 604(e) violations because (1) it represents a mere 8.5% of the STBs sold between 2013 and 2018 (2) does not include UX1 or UX2 alfaboxes, and (3) does not include STBs sold in 2019 and 2020.  Therefore, Channel One believes Section 605(e)(4) of the FCA entitles it to at least 3,000 statutory damages awards of between $10,000 and $100,000 each ($30,000,000 to $300,000,000) against RTV Defendants for the import or sale of STBs designed primarily to distribute unlawfully intercepted satellite communications with knowledge that RTV subscribers would use them for that purpose.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

> **B.  The Court Should Make An Award of 200 Awards of FCA Section 604(e)(4) Damages Based On RTV Defendants' Creation and Permitting Consumers To Download Apps**

In addition, RTV distributes apps compatible on Google, Samsung, and Apple devices that enable these devices to distribute content like an STB.  (R56 ¶¶ 87-92). Rudik has produced records showing 5,767 RTV App downloads, but he claims only 200-300 were legitimate RTV subscribers.  (R56 ¶ 90).  So RTV has committed potentially 40,898 device violations.  *See Panorama* at *14 "In cases involving the unlawful use of cable decoders or other 'descrambling devices' to intercept programming without paying for it, the Second Circuit has held that "a violation occurs each time a device is purchased and installed."  (citing *Cmty. Television Sys., Inc. v. Caruso*, 284 F.3d 430, 435 (2d Cir. 2002).  *DISH Network, LLC v. Henderson*, No.

519CV1310MADATB, 2020 WL 2543045, at *4 (N.D.N.Y. May 19, 2020)(finding each access code to be a device).  Like the STBs, Channel One will seek conservative statutory damages. Therefore, Channel One requests 200 awards of statutory damages pursuant to Section 605(e)(4) of the FCA entitles it to a damages award of between $10,000 and $100,000 each  ($2,000,000 to $20,000,000) against RTV Defendants for the sale of apps designed primarily to distribute unlawfully intercepted satellite communications.  *See* 47 U.S.C. § 605(e)(3)(C)(i)(II).

## II.    Defendant Rudik Is Individually Liable For The Conduct Of RTV Defendants

"Establishing individual liability under Section 605(a) requires showing either 'contributory infringement,' which arises when the individual 'authorize[d] the violations,' or 'vicarious liability,' which arises when the individual 'had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" *Joe Hand Promotions, Inc. supra quoting J & J Sports Prods., Inc. v. Tellez*, 2011 WL 6371521, at *3 (E.D.N.Y. Dec. 20, 2011).  Liability is warranted against Rudik individually.  *J & J Sports Prods., Inc. v. Usman*, 2019 WL 6777387, at *3.

Rudik exerts total control of RTV Defendants.  Rudik uses RTV, Techstudio, Servernaya, and ESTIDesign to operate a piracy business in which he profits.  (R56 ¶¶ 95-101) (showing Rudik controlled and moved money among the accounts).  Rudik formed RTV to advertise and distribute pirated programming.  (R56 ¶¶ 5, 25, 34, 35, 56-65). Rudik uses Techtsudio and Servernaya to obtain equipment like STBs, transcoders, and servers that enable the redistribution of pirated Programming.  (R56 ¶¶ 45-55, 95-101)   (RTV invoices from Elantech, bank statements, Paypal, and credit card statements).  Rudik used ESTIDesign to collect subscription fees, advertise, and develop and app for RTV, the next frontier in IPTV piracy. (R56 ¶¶ 14, 86, 89, 91, 92, 93, 98, 99, 100, 101).  Rudik learned from his experience with Kartina TV the costs of operating a legitimate

14

service.  (R56 ¶¶ 25-34).  As a result, RTV Defendants have earned at least $7 million from 2014 to present for the illicit RTV service.  (R56 ¶ 94) (PayPal and Stripe records).  Rudik has not shown any willingness to cease his lucrative operation because he profits handsomely.  Therefore, the Court should find him personally liable for all statutory damages assessed against RTV Defendants for directing and profiting from the illegal activities of RTV, Techstudio, Servernaya, and ESTIDesign.

### III.    The Court Should Grant Summary Judgment On RTV Defendants' Affirmative Defenses

To avoid dismissal, the burden shifts to the defendant to plead plausible facts supporting affirmative defenses. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). The Court should grant summary judgment on RTV Defendants' eleven affirmative defenses because of (1) the law of the case, (2) RTV Defendants Answer is devoid of any factual assertions, and (3) even in the absence of copyright ownership, the FCA authorizes statutory damages and attorney's fees.  RTV Defendants' Answer asserts eleven affirmative defenses: (1) failure to state a claim;  (2) unclean hands; (3) copyright misuse; (4) lack of rights under United States and Russian law; (5) lack of Copyright Act registration bars Channel One's claims for attorneys' fees and statutory damages; (6) simultaneous domestic broadcast of first broadcast in the United States; (7) innocent infringement; (8) no volitional act of RTV Defendants; (9) equitable estoppel, waiver and/or ratification; (10) damages caused by Channel One's own conduct, and (11) Defendants obtained Channel One programming from a licensed provider of Channel One, Kartina TV.  Answer to Second Amended Complaint ECF 199 at 25-26.

**A.** **Summary Judgment Is Warranted On The First, Fourth And Sixth Affirmative Defenses Under The FCA Because The FCA Does Not Require Broadcasters To Own The Underlying Copyrights To Enjoy Protection From Unauthorized Retransmissions**

Summary judgment is warranted on the first (failure to state a claim), fourth (lack of rights under United States and Russian law), and sixth (simultaneous domestic broadcast of first broadcast in the United States) should be dismissed because the defenses are barred by the law of the case doctrine.  This Court already decided that Channel One's FCA and Copyright claims state claims. (ECF 122).  The Court held in its February 21, 2019 order on the motion to dismiss that the Berne Convention extends U.S. copyright protection to Channel One Programming because it is first broadcast in the Russian Federation.  (ECF 105 at 8)("Under this principle, Plaintiffs are entitled to the same copyright protections as those granted to United States authors under the Copyright Act.") *(citing Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 89 (2d Cir. 1998).  (ECF 105 at 7-11).  As a result, Channel One has rights under United States law and has standing to pursue its copyright claims.  However, because Channel One has elected summary judgment on its FCA claims which do not require that a plaintiff broadcaster be a copyright holder, *DISH Network, LLC v Henderson*, 519CV1310MADATB, 2020 WL 2543045, at *1 (N.D.N.Y.  May 19, 2020)("DISH contracts for and purchases the right to broadcast DISH programming from various rights holders."), summary judgment is warranted because "simultaneous broadcast" is not a defense under the FCA.

**B.** **Summary Judgment Is Warranted on the Seventh, Eighth Ninth and Tenth Affirmative Defenses Because The FCA Imposes Strict Liability, Where, As Here, A Commercial Use Has Been Shown**

Here, because RTV Defendants' commercial exploitation of the Programming is undisputed and because and the RTV Defendants have failed to plead plausible facts supporting the seventh (innocent infringement), eighth (no volitional act of RTV Defendants) and ninth

16

(equitable estoppel, waiver and/or ratification) and tenth (damages caused by Channel One's own conduct) summary judgment is warranted.   Under the FCA, courts have found that commercial defendants are liable for statutory damages where they only paid the residential rate for a pay-per-view program. *Joe Hand Promotions, Inc. v Maupin*, 2016 WL 6459631 at *5 (E.D.N.Y. Oct. 31, 2016) *citing Garden City Boxing Club, Inc. v. Polanco*, No. 05–CV–3411, 2006 WL 305458, at *3 (S.D.N.Y. Feb. 7, 2006), *aff'd*, 228 Fed.Appx. 29 (2d Cir. 2007) (entering judgment against the defendants after trial where the court found that defendants either used a black box to descramble the cable signal or spliced the cable from a residential account).  RTV Defendants have pleaded no facts and provided no evidence supporting the seventh, innocent infringement defense.  Rather, the facts show that the RTV Defendants knowingly purchase a signal they know is pirated, purchase equipment to process the signal for redistribution, and to store programming.  RTV Defendants continue to distribute Channel One Programming despite knowledge of wrongdoing.

### C. Summary Judgment Is Warranted On The Third (Copyright Misuse) and Tenth (Damages Caused By Channel One's Own Conduct) Affirmative Defenses Because These Defenses Were Neither Pleaded Nor Proven

Summary judgment is warranted on the third (copyright misuse) and tenth (damages caused by Channel One's own conduct) be dismissed because these are unsupported by facts in the pleadings or any facts supporting these defenses gathered during discovery.  To avoid dismissal, the burden shifts to the defendant to plead plausible facts supporting affirmative defenses. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013) (*citing Iqbal v. Twombly*, 556 U.S. at 678*)*.  These affirmative defenses are entirely conclusory, contrary to RTV Defendant's own documents and are thus not sufficient to withstand review. *Erickson Beamon Ltd. v. CMG Worldwide, Inc*., No. 12 CIV 5105 NRB, 2014 WL 395089, at *4 (S.D.N.Y. Aug. 13, 2014) *citing* Fed. R. Civ. P. 8(c) (striking and dismissing illegality, fraud, lack of standing, failure to mitigate,

acknowledgement, and justification defenses that were conclusory and contrary to the record). Dismissal is also warranted under Federal Rule of Civil Procedure 12(f). Rule 12(f) allows a court to strike "an insufficient defense" from a pleading. Fed. R. Civ. P. 12(f); *see Burck v. Mars, Inc*., 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008). RTV Defendant's entirely conclusory defenses should be stricken as insufficient and because admissible evidence contradicts those defenses.

The third defense, copyright misuse, is unsupported by any facts indicating Channel One had any uncompetitive purpose in suing RTV Defendants. *See UMG Recordings, Inc. v. Lindor*, 531 F. Supp. 2d 453, 458 (E.D.N.Y. 2007)("Most examples of copyright misuse arise from tying arrangements, anticompetitive contracts or licensing agreements, or the refusal to license to competitors."). Nor is there evidence that Channel One "has used its copyright to gain an impermissible competitive advantage." *Id*. Rather, Channel One commenced this action to stop RTV Defendants from infringing Channel One's copyrighted programming for profit. In fact, Rudick knew that he could distribute Kartina TV, which contained legal, licensed versions of Channel One Programming because he previously sold access codes of Kartina TV, when Kartina TV was a licensed provider of Channel One. (R56 ¶ 33). RTV Defendants chose a more lucrative illegal route by reselling infringing content. (R56 ¶¶ 25-26) (Kartina terminated Rudik for violating its terms of service in February 2017). Rudik has also testified that the RTV service is not the same as the Kartina TV service. (R56 ¶ 30). RTV Defendants still distribute Channel One while Kartina TV does not. (R56 ¶¶ 33, 59) (RTV was still distributing Channel One a year after Kartina TV stopped the same). Copyright misuse is not applicable because RTV Defendants are pirates, not legitimate, legal competitors of Channel One, a licensor, or Kartina TV, a former licensee.

18

The gravamen of estoppel, a defense long recognized as available in actions at law is "misleading and consequent loss." *Petrella v Metro-Goldwyn-Mayer, Inc.,* 572 US 663, 684, 134 S Ct 1962, 1977, 188 L Ed 2d 979 (2014).  RTV Defendants have failed to allege any misleading conduct by Channel One nor have they provided evidence illustrating any conduct of Channel One or a third party that caused damage to Channel One in support of its tenth affirmative defense.

**D.    Summary Judgment Should Be Granted On RTV Defendants' Eleventh Affirmative Defense Of Obtaining A License Because None Of The RTV Defendants Had A License To Stream Channel One Programming**

Summary judgment should be granted on the RTV Defendants' eleventh affirmative defense because the allegation of a license permitting the launch of a streaming service including the Programming is entirely baseless.  The existence of a license is an affirmative defense that the alleged infringer must plead and prove. *Sohm v Scholastic Inc.,* 959 F3d 39, 48 (2d Cir. 2020)(copyright); *Yamashita v. Scholastic Inc.*, 936 F.3d 98, 104 (2d Cir. 2019); *see also Bourne v. Walt Disney Co.*, 68 F.3d 621, 630–31 (2d Cir. 1995).  A licensee's right to use a licensor's intellectual property ceases when the license expires. *See e.g., Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 230 (2d Cir.1982) (Once the contract between licensor and licensee expired, the licensee was liable for copyright infringement).  As detailed above, neither Channel One nor any of its licensed IPTV providers authorized Apeiron or Digital Services to distribute Channel One Programming.  (R56 ¶ 37).  Rudik purchased Kartina TV access codes, not any of the other RTV Defendants.  (R56 ¶ 26-27).  The access codes permitted consumers to access Kartina TV content only not for RTV to stream any content.  (R56 ¶¶ 27-30).  Kartina TV has not provided authorized access codes to Rudik since February 2017.  (R56 ¶¶ 25, 31).  Accordingly, the RTV eleventh defense of obtaining Channel One Programming from licensed providers of Channel One should be dismissed.

RTV Defendants' fifth defense, lack of Copyright Act registration barring Channel One's claims for attorneys' fees and statutory damages fails because FCA Section 605(e)(3)(B)(iii) provides for "the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails" of a party aggrieved by a violation of Section 605(a) or (e), as is the case here.  Any alleged lack of copyright registration has no effect on the FCA claims.

### E.    A Permanent Injunction And Declaratory Judgment Are Warranted

Having established liability under the FCA, Channel One seeks injunctive relief. *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 233 (2d Cir. 2019).

The FCA vests the Court with the explicit power to issue injunctions precluding future violations. *See* 47 U.S.C. § 605(e)(3); *see also Panorama Decision* ; *Garden City Boxing Club, Inc. v. Estien*, No. 05 Civ. 3687 (RJD), 2007 WL 841806, at *4 (E.D.N.Y. Feb. 9, 2007) (FCA). Courts also have the power to issue injunctions pursuant to traditional principles of equity. *Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 660 (S.D.N.Y. 2013)). For an injunction to issue, a plaintiff must meet the *eBay, Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) four factor test:

> "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."
>
> *Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010).

As set forth above, Channel One has been irreparably harmed by the loss of unique subscribers and by harm to authorized licensees such as Time Warner Cable, such that monetary damages would not be adequate compensation.  The Court has the authority to order RTV Defendants, which admittedly own the Website, servers and payment processing tools to restrict,

transfer and take other actions with respect to the Website. *Panorama Decision* at 4; *Paramount Pictures Corp. v. Does*, No. 15-CV-5819, 2015 WL 10013786, at *1 (S.D.N.Y. Nov. 24, 2015).

The FCA provides that the Court "may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)." 47 U.S.C. § 605(e)(3)(B)(i). Here, RTV's efforts to "evade collection and secrete assets" can be inferred by its conduct in registering numerous shell entities and knowingly violating distribution agreements. *GE Transportation (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*, No. 15 CIV. 6194 (PAE), 2016 WL 3525358, at *9 (S.D.N.Y. June 22, 2016). Therefore, the Court should enter an injunction freezing RTV Defendants' assets. Therefore, the Court should permanently enjoin the RTV Defendants from distributing Channel One Programming. A proposed order is attached as Exhibit M to the Blaustein Declaration.

## CONCLUSION

In light of the foregoing, the Court should award summary judgment determining:

(1) that RTV Defendants violated the third sentence of Section 605(a) of the Federal Communications Act ("FCA"), 47 U.S.C § 605(a), by unlawfully selling access to Channel One's satellite-originated content ("Programming") without a license and granting 1,800 awards of enhanced statutory damages of not less than $1,000 and not more than $10,000 each;

(2) that SR Express Consulting DBA Techstudio, RTV, and Rudik violated Section 605(e)(4) by selling customized set top boxes ("STB") that are preconfigured to provide RTV's clients with access to Channel One's content without a license and by offering the RTV App and granting 3,200 awards of enhanced statutory damages of not less than $10,000 and not more than $100,000 each;

21

(3)  award injunctive relief against RTV Defendants use of Channel One's Programming including disabling the Website, freezing RTV Defendants' assets;

For the reasons set forth above, Channel One respectfully requests that this Court grant any other relief the Court deems just, proper and equitable.

Dated: New York, New York
        September 21, 2020

Respectfully submitted,

**DUNNINGTON BARTHOLOW & MILLER LLP**
*Attorneys for Plaintiff Channel One*


By:   /s/Raymond J. Dowd_____
        Raymond J. Dowd
        Samuel A. Blaustein
        Hardin P. Rowley
        Akbar A. Khan
        230 Park Avenue, 21st Floor
        New York, New York 10177
        Telephone: 212-682-8811
        Facsimile: 212-661-7769
        RDowd@dunnington.com
        SBlaustein@dunnington.com
        HRowley@dunnington.com