UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/2024
```

JOINT STOCK COMPANY "CHANNEL
ONE RUSSIA WORLDWIDE,"

        Plaintiff,

   -against-

RUSSIAN TV COMPANY INC., et al,

        Defendants.

18-CV-2318 (LGS) (BCM)

**REPORT AND RECOMMENDATION
TO THE HON. LORNA G. SCHOFIELD**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Joint Stock Company "Channel One Russia Worldwide" (Channel One), a state-owned Russian television producer, sued Russian TV Company, Inc. (Russian TV), a New York corporation providing internet protocol television (IPTV) service, together with its owner Steven Rudik and three affiliated companies, seeking damages for defendants' unauthorized rebroadcasting of plaintiff's programming. Having won $1,149,000 in damages under § 605(a) of the Federal Communications Act (FCA), 47 U.S.C. § 605(a), plaintiff now seeks $1,072,370 in attorneys' fees and expenses under § 605(e)(3)(B)(iii), which states that the court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). Defendants urge the Court to award a small fraction of that sum, because (i) some of plaintiff's attorneys' fees were paid by an interested non-party, Kartina Digital GmbH (Kartina); and (ii) plaintiff prevailed on only one of the 13 claims it originally pleaded, and won a "tiny fraction" of the damages it sought.

The fee application has been referred to me for report and recommendation. For the reasons that follow, I recommend that plaintiff be awarded a total of $450,758.

## I.    BACKGROUND

The facts underlying this action are described at length in several prior opinions in this matter, including *Joint Stock Co. "Channel One Russia WorldWide" v. Russian TV Co.*, 2021 WL

4341053 (S.D.N.Y. Sept. 22, 2021) (*Russian TV I*), *reconsideration denied*, 2021 WL 5233322 (S.D.N.Y. Nov. 9, 2021), in which the Hon. Lorna G. Schofield, United States District Judge, found defendants liable for violating FCA § 605(a), and *Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, 2022 WL 17490873 (S.D.N.Y. Nov. 18, 2022) (*Russian TV II*), *report and recommendation adopted*, 2023 WL 3026971 (S.D.N.Y. Apr. 20, 2023), in which I analyzed the damages evidence and recommended an award of $1,149,000 and the entry of a permanent injunction. The facts are summarized here only to the extent relevant to the pending fee application.

Channel One, headquartered in Moscow, produces and broadcasts television programming (the Programming) and has a large audience in the Russian Federation. *Russian TV I*, 2021 WL 4341053, at *1. Channel One entered into licensing agreements granting third parties the right to broadcast a version of the Programming in the United States. *Id*. One of its licensees was Kartina, which was authorized to "stream the Programming" via IPTV in the United States. *Id*.

In 2014 (four years before this action was filed), Kartina retained Dunnington, Bartholow & Miller LLP (Dunnington or the Firm), which has acted as Channel One's counsel of record throughout this litigation. The July 7, 2014 retainer agreement between Kartina and Dunnington "authorized the Firm to investigate and pursue legal efforts to combat unauthorized IPTV broadcasts, including commencing litigation," and "further authorized the Firm to obtain authority from Kartina's licensors of copyrighted television programs and films to commence litigation in the names of those licensors." Declaration of Raymond J. Dowd (Dowd Decl.) (Dkt. 350) Ex. G (Kartina Agreement) (Dkt. 350-7) at 1. Kartina and Dunnington further "agreed . . . that Kartina will be entirely responsible for paying the Firm for all its fees, costs and disbursements incurred in such representation, without any obligation on the Firm's part to seek payment from any such

licensors." *Id.* Kartina requested, "for commercial reasons," that it "not be named as a plaintiff" in any of the lawsuits contemplated by the retainer agreement. *Id*. at 3. The Kartina Agreement did not discuss the possibility of a fee award in the event of a successful litigation, and did not address the allocation of any such award should it be granted.

Russian TV, together with its affiliates SR Express Consulting Inc. d/b/a Techstudio (Techstudio), Servernaya Inc., and ESTIDesign, Inc., offered over-the-internet access to plaintiff's Programming (together with a wide variety of other Russian-language programming) to consumers in New York, and elsewhere, in exchange for a subscription fee. *Russian TV I*, 2021 WL 4341053, at *1. For a time, defendants did so legally, by reselling "access codes" provided by Kartina, which effectively made Russian TV its sublicensee. *Id*. at *2. However, defendants also purchased access codes from unlicensed third-party vendors, "which resulted in unauthorized retransmissions." *Id*. at *3. Kartina broke off its relationship with Russian TV in March of 2017, and Russian TV resold the last of its Kartina access codes in July 2019. *See Russian TV II*, 2022 WL 17490873, at *2. After that, although "Russian TV continued to transmit the Programming to its subscribers until at least August 2020," all of its retransmissions were unauthorized. *Russian TV I*, 2021 WL 4341053, at *4.

This action was commenced on March 15, 2018, with Channel One as the sole plaintiff and Dunnington as its counsel of record. In its original Complaint (Dkt. 1), Channel One asserted ten claims against Russian TV, Techstudio, and Rudik, alleging violations of the FCA (Counts I-II), the Digital Millennium Copyright Act (Counts III–IV), the Lanham Act (Counts V-VI), the Copyright Act (Counts VII-VIII), and the New York General Business Law (Count IX), as well as common law claims for unfair competition and copyright infringement (Count X). On October 4, 2019, after motion practice, Channel One filed its Second Amended Complaint (SAC) (Dkt. 189),

asserting seven claims against all five defendants, pursuant to the FCA (Counts I-IV), the Copyright Act (Counts V-VI), and the Declaratory Judgment Act (Count VII).

As the litigation progressed, Dunnington sent its invoices to Kartina, which – for a time – paid them. According to the Firm's records, the last legal bill that Kartina paid in connection with this action was Dunnington's invoice dated July 17, 2019, which covered services performed and expenses incurred through May 2019. *See* Dowd Decl. Ex. C, at ECF pp. 8-34. Kartina paid $194,603 in September 2019 ($50,000 on September 9, $59,975 on September 23, and $84,628 on September 26), apparently in full satisfaction of the July 17, 2019 invoice. *See* Supplemental Declaration of Raymond J. Dowd (Supp. Dowd Decl.) (Dkt. 367) Ex. A (Spreadsheet), at ECF p. 2; *see also* Dowd Decl. Ex. C at ECF p. 54 (Dunnington's invoice dated October 18, 2019, showing prior payments applied). Kartina paid the Firm's earlier invoices in full, except that it "deferred" payments of $2,833 on the Firm's invoice dated December 8, 2018, and $1,845 on its invoice dated February 25, 2019. *See* Spreadsheet at ECF p. 2 (all figures rounded to the nearest dollar).

Kartina was also responsible for paying the Firm's October 18 and December 17, 2019 invoices (covering services performed and expenses incurred from June through November, 2019), but failed to do so. *See* Dowd Decl. Ex. C, at ECF pp. 35-63; Spreadsheet at ECF pp. 2-3. According to the Firm's records, Channel One made a small partial payment on the October 18 invoice (paying $4,018 out of $213,872), and another small partial payment on the December 17 invoice (paying $572 out of $63,087), leaving $272,369 unpaid and owed by Kartina on those two invoices. Spreadsheet at ECF pp. 2-3.

On February 12, 2021, Channel One and Dunnington entered into a new retainer agreement, *see* Dowd Decl. Ex. I (the Channel One Agreement) (Dkt. 350-9), to "confirm" Channel One's retention of Dunnington in connection with three then-pending IPTV lawsuits,

including this one (referred to therein as the RTVCO Action).[1] According to the Channel One Agreement, Kartina "failed to fulfill[] its obligations, under the Kartina Agreement, to timely pay the Firm's fees in the . . . RTVCO Action." Channel One Ag. at 2. Moreover, "[o]n January 29, 2021, Kartina informed Channel One that it would no longer be working with the Firm." *Id*. Consequently, Channel One agreed to be "responsible for the Firm's legal fees and expenses for services rendered . . . commencing May 1, 2020 in the RTVCO Action." *Id*. at 3. According to the Channel One Agreement, plaintiff had already paid four more Dunnington invoices – dated July 24, September 17, November 13, and December 17, 2020, covering services rendered from May through November, 2020 – bringing its total payments for the Firm's services in this action to $146,018. *Id*.; *see also* Spreadsheet at ECF pp. 2-3; Dowd Decl. Ex. D (2020 invoices).[2]

As for the unpaid Kartina balance (referred to as the "Deferred RTVCO Fees"), the Channel One Agreement calculated that a total of $275,880 in fees and expenses had been "invoiced to," and was "owed solely by, but not paid by Kartina in the RTVCO Action[.]" Channel One Ag. at 2. Dunnington reassured Channel One that it would "have no responsibility for the . . . Deferred RTVCO Fees," *id*. at 3, *unless* the Firm obtained a recovery, "by judgment or settlement, in favor of Channel One," in any of the three IPTV lawsuits covered by the Channel One Agreement. In that case, the recovery would be paid:

> *First*, to the Firm for fees and expenses, if any, that Channel One was obliged to, but did not, pay under this Retainer Agreement;

---

[1] The Channel One Agreement references an earlier agreement, dated August 12, 2020, "under which Channel One agreed to assume certain obligations for legal fees in the RTVCO Action." Channel One Ag. at 2. However, it was "supersed[ed]" by the February 12, 2020 agreement now before the Court. *Id*. Plaintiff did not provide a copy of the earlier agreement.

[2] The record before this Court does not include any invoices for Dunnington's services from December 2019 through April 2020 (although the litigation was active during those months), or any payment records with respect to that period of time. Although the Court called this gap to plaintiff's attention (*see* Dkt. 366), plaintiff did not address it.

*Second*, to Channel One, to reimburse Channel One for legal fees and expenses that it has paid . . . (and thus to place Channel One in the position that it would be in had Kartina fulfilled its obligations under the Kartina Agreement);

*Third*, to the Firm, for its Deferred Fees not already recovered by the Firm . . . (the "Unrecovered Deferred Fees"), provided that the Firm shall provide detailed invoices of its Deferred Fees to Channel One and, if Channel One advises the Firm that it believes the Deferred Fees are in excess of reasonable fees, the amount paid to the Firm shall be limited to the Unrecovered Deferred Fees less the difference between the Deferred Fees and the amount of the Deferred Fees that Channel One deems to be reasonable, and balance of the Unrecovered Deferred Fees shall be held by the Firm in escrow pending resolution of this issue; and

*Fourth*, to Channel One.

*Id.* at 3. The Channel One Agreement, like the Kartina Agreement, does not discuss the possibility of a fee award should Channel One prevail. Nor – other than in the passages quoted above – does it address the allocation of any such award should it be granted.

In 2021, 2022, and 2023, Dunnington sent twelve more invoices to plaintiff for its services in this action. *See* Dowd Decl. Exs. E-F; Spreadsheet at ECF pp. 3-5. Channel One paid the 2021 invoices, as well as the January 20, February 23, and March 9, 2022 invoices. *Id.* However, Dunnington's last three invoices, dated November 9 and December 22, 2022, and May 3, 2023, remain unpaid. *See* Spreadsheet at ECF 4-5. According to plaintiff's brief, "Channel One was current with its fees until OFAC sanctions." Pl. Mem. (Dkt. 349) at 3.[3]

---

[3] As noted by Judge Schofield in the Court's January 12, 2024 Opinion & Order (1/14/24 Op.) (Dkt. 368), Channel One is a "specially designated" (sanctioned) entity under Executive Order 14024, issued on April 15, 2021 (EO 14024), and the implementing rules promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (OFAC). 1/14/24 Op. at 2-3. Channel One was added to the list of specially designated entities on May 8, 2022. *See* Press Release, Office of Foreign Assets Control, U.S. Dep't of Treasury, U.S. Treasury Takes Sweeping Action Against Russia's War Effort (May 8, 2022), https://home.treasury.gov/news/press-releases/jy0771 (last visited January 30, 2024). Consequently, Channel One's U.S.-based "property and interests in property" are "blocked and

In total, the records submitted to the Court show that Channel One has paid Dunnington $359,476 for its services in this action and owes it another $29,766. *See* Spreadsheet at ECF pp. 3-5. Additionally, as described above, Channel One has a conditional obligation (dependent on the amount of its ultimate recovery in the three lawsuits covered by the Channel One Agreement) to pay Dunnington the $275,880 in Deferred RTVCO Fees left unpaid by Kartina. Thus, Channel One has paid, now owes, or may become obligated to pay a total of $665,122. It has no obligation to pay all or any part of the remaining legal fees and expenses underlying its fee application, which were charged to, and paid by, Kartina.

## II.   PROCEDURAL HISTORY

Discovery, which I supervised, concluded on August 21, 2020. (*See* Dkt. 238.) Thereafter, the parties agreed to a summary trial of Channel One's FCA claims before Judge Schofield. (*See* Dkt. 260.) "Plaintiff agreed that resolution of its claims under the FCA in its favor would resolve all claims, including those for copyright." *Russian TV I*, 2021 WL 4341053, at *1. Consequently, the parties tried only the FCA claims.

On September 22, 2021, Judge Schofield determined that defendants violated FCA § 605(a) by rebroadcasting plaintiff's Programming without authorization (that is, by reselling unauthorized access codes from the third-party vendors), *Russian TV I*, 2021 WL 4341053, at *4, but declined to find defendants' conduct "willful," which could have triggered enhanced statutory

---

may not be transferred, paid, exported, withdrawn, or otherwise dealt in." EO 14024 § 1. Newly promulgated OFAC rules further prohibit "the enforcement of any . . . judgment . . . purporting to transfer or otherwise alter or affect property or interests in property" of designated entities. 31 C.F.R. § 587.506(d). Thus, payment on any fee award in Channel One's favor will be stayed until "Plaintiff is no longer subject to sanctions under E.O. 14024 or any party has obtained a specific license from OFAC authorizing Plaintiff's receipt of funds[.]" 1/14/24 Op. at 5.

damages. *Id*. at *4-5.[4] Further, Judge Schofield rejected plaintiff's claims that the customized set-top boxes (STBs) provided by Russian TV to its customers, and the "RTV App" it developed, violated FCA § 605(e)(4), which prohibits the manufacture, sale, or distribution of any device or equipment that is "primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a)." 47 U.S.C. § 605(e)(4). *See Russian TV I*, 2021 WL 4341053, at *6 ("Defendants did not violate FCA § 605(e)(4) by selling or distributing either the STB or the RTV App."). These claims, had they been successful, would also have entitled plaintiff to substantial statutory damages.[5]

The District Judge reserved on the question of the appropriate relief, and referred those issues to me for report and recommendation. (Dkts. 293, 317.) On November 18, 2022, I determined that plaintiff "established with reasonable certainty that defendants provided at least 1,149 subscribers with unauthorized access codes, sourced from unlicensed vendors, in violation of FCA § 605(a)," and on that basis recommended an award of $1,149,000 in statutory damages and the entry of a permanent injunction, with attorneys' fees and costs to be determined after further proceedings. *Russian TV II*, 2022 WL 17490873 at *6-8.

I directed plaintiff to file its fee application due 14 days after the District Judge ruled on my recommendation, *Russian TV II*, 2022 WL 17490873, at *9, and reminded plaintiff that its

---

[4] The FCA provides a statutory damages remedy for violations of § 605(a) "in a sum of not less than $1,000 or more than $10,000" for "each violation," as the court "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the violation was willful, the court may increase the award "by an amount of not more than $100,000 per violation." *Id*. § 605(e)(3)(C)(ii).

[5] Statutory damages may be awarded for violations of § 605(e)(4) "in a sum of not less than $10,000 or more than $100,000" for each violation, as the court "considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In this case, plaintiff sought statutory damages of $32 million to $320 million, in the aggregate, on its § 605(e)(4) claims. *See* Pl. Mem. in Supp. of Mtn. for Summ. J (Dkt. 264) at 11-13, 21.

application "must be supported by contemporaneous time records, properly authenticated, that show, for each attorney or other timekeeper, the date of service, the hours expended, the nature of the work performed, and the hourly (or other) rate actually charged to and paid by the client for that work, as well as admissible evidence documenting all expenses for which reimbursement is sought." *Id.* Noting that Kartina had been partially funding this litigation on behalf of Channel One, I specifically directed plaintiff to "address whether fees and expenses paid by a nonparty are compensable pursuant to § 605(e)(3)(B)(iii)." *Id.*

On April 20, 2023, Judge Schofield adopted my damages recommendation in full, *see Joint Stock Co. "Channel One Russia Worldwide" v. Russian TV Co. Inc.*, 2023 WL 3026971, at *1 (S.D.N.Y. Apr. 20, 2023), and entered a permanent injunction barring defendants from broadcasting or otherwise distributing plaintiff's Programming without prior authorization. (Dkt. 346.) On May 4, 2023, plaintiff filed its moving brief with respect to fees and expenses, supported by the Dowd Declaration. Defendants filed their responding brief (Def. Opp.) (Dkt. 360) on June 15, 2023. Plaintiff filed a reply memorandum (Pl. Reply) (Dkt. 361) on June 22, 2023. At the Court's request, plaintiff expanded the record on January 9, 2024, by filing the Supplemental Dowd Declaration with its attached Spreadsheet, detailing the amounts paid and owed on each of the invoices submitted to the Court.

On January 30, 2024, Judge Schofield entered judgment against defendants in the amount of $1,149,000, "together with attorney's fees and costs to be determined[.]" (Dkt. 372.) However, enforcement of the judgment is stayed, pending further order of the Court, pursuant to EO 14024 and relevant OFAC rules. (*Id.*)

### III.   DISCUSSION

The parties agree that Channel One prevailed under § 605(a) of the FCA and is therefore entitled to an award under § 605(e)(3)(B)(iii). They further agree that, in order to calculate "reasonable attorneys' fees," the Court must calculate the applicable "lodestar," that is, "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). *See* Pl. Mem. at 5; Def. Opp. At 4-5.[6] Beyond these basic principles, however, the parties disagree sharply as to how to calculate plaintiff's award.

Channel One seeks "100% of fees or $1,072,369.98 in connection with time entries over five years of litigation," Pl. Mem. at 1; that is, 100% of the fees and expenses charged by Dunnington to this action, from its inception, regardless of whether Channel One paid (or has any obligation to pay) those charges. Defendants contend that Channel One cannot "recover" fees that that it neither paid nor owes; that is, fees that were previously paid, pursuant to the Kartina Agreement, by Kartina. *See* Def. Opp. At 2-4. Even as to the fees and expenses paid or owed by Channel One itself, defendants urge the Court to "further reduce the requested fees in proportion to Plaintiff's highly attenuated success in this action." *Id.* at 4.

I address each issue in turn.

### A.   Fees Paid by Non-Party

In what appears to be a question of first impression under FCA § 605(e)(3)(B)(iii), this Court must determine whether a prevailing plaintiff – here, Channel One – may recover legal fees and related expenses that were billed to and paid by a nonparty – here, Kartina – under a contract

---

[6] Defendants accept this principle indirectly, by citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and *Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005), which employ the lodestar method. Def. Opp. at 5.

in which that nonparty agreed unconditionally to be "entirely responsible" for paying the prevailing plaintiff's counsel. Kartina Ag. at 1; *see also* Channel One Ag. at 4 (confirming that Channel One has no obligation, under any circumstances, for fees previously invoiced to and paid by Kartina).

"When confronting a question of statutory construction, this Court 'begin[s] with the language of the statute.'" *Pfizer, Inc. v. United States*, 2016 WL 6902196, at *2 (S.D.N.Y. Oct. 31, 2016) (Schofield, J.) (quoting *Townsend v. Benjamin Enters.*, 679 F.3d 41, 48 (2d Cir. 2012)). Section 605(e)(3)(B)(iii) requires the Court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." Defendants reason that since only Channel One (not Kartina) is an "aggrieved party who prevail[ed]," and since Channel One can only "recover" sums that it actually incurred, the statute does not authorize the Court to award fees "that were incurred by a (non-prevailing) nonparty such as Kartina[.]" Def. Opp. At 2. Plaintiff responds that "proof of payment is not a predicate for determining a fee award," Pl. Reply at 4, and argues – without reference to the specific statute at issue – that the full amount sought should be awarded because "Dunnington did the work on this case . . . and incurred $1,072.369.98 in hourly fees working on matters reasonably required to arriv[e] at this result[.]" *Id*. at 2.

Defendant has the better end of the debate. Fee-shifting statutes, like fee-shifting provisions in contracts, create exceptions to the "American Rule," under which "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975), and consequently must be "strictly construed." *Merit Const. All. V. City of Quincy*, 759 F.3d 122, 133 (1st Cir. 2014); *accord Ozmun v. Portfolio Recovery Assocs., L.L.C.*, No. 19-50397, 2022 WL 881755, at *5 (5th Cir. Mar. 24, 2022); *Peer v. Liberty Life Assurance Co. of Bos.*, 992 F.3d 1258, 1262 (11th Cir. 2021); *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1367 (Fed. Cir. 2012), *aff'd sub nom. Sebelius v. Cloer*, 569 U.S.

369 (2013); *In re Crescent City Ests., LLC*, 588 F.3d 822, 826 (4th Cir. 2009); *Partners for Payment Relief, LLC v. Dreambuilder Invs., LLC*, 2016 WL 4205595, at *4 (S.D.N.Y. Aug. 8, 2016) (Sullivan, J.). The term "recovery," as used in § 605(e)(3)(B)(iii), is best understood as "[t]he regaining or restoration of something lost or taken away." Black's Law Dictionary (11th ed. 2019).[7] Thus, in the absence of contrary legislative history or a compelling public policy argument, § 605(e)(3)(B)(iii) should be read to limit the award of reasonable attorneys' fees and costs to those incurred by the prevailing party; that is, sums that the fee applicant has actually paid – or is obligated to pay – to its counsel.

Any other rule would result in a windfall, as this case illustrates.[8] Thus, in analogous circumstances arising under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) – which, like many federal fee-shifting statutes, expressly limits fee awards to sums "incurred" by the prevailing party – the courts have balked at awarding fees that were paid (or will be paid) by a third party. *See United States v. Paisley*, 957 F.2d 1161, 1164 (4th Cir. 1992) ("[W]e hold that, to

---

[7] "Recovery" can also mean "[t]he obtainment of a right to something (esp. damages) by a judgment or decree." Black's Law Dictionary. In *Pfizer*, noting these two meanings of the word, the Court reasoned that "whether Plaintiff previously paid the sum is not dispositive" when analyzing whether interest could be "recovered" on an overpayment of tax. 2016 WL 6902196, at *3 (interpreting 28 U.S.C. § 1346(a)(1), which governs suits against the United States "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected"). In *Pfizer*, however, the IRS delayed in refunding an overpayment of almost $500 million to the taxpayer, which deprived it of the time-value of its money. *Id*. at *1-2. Thus, although Pfizer did not previously pay the requested interest to the IRS, the purpose of the interest it sought was to enable it to recover precisely that value, which had been "lost or taken away" when the IRS delayed the refund.

[8] Channel One's moving papers do not specify how the fee award will be allocated if, as requested, it is awarded more than the $665,122 that it has paid (or owes) to Dunnington. If Channel One keeps the excess, it will enjoy a windfall on top of the $1,149,000 in damages granted by the Court. If Channel One pays the excess to its counsel, the Firm will enjoy a windfall, earning more than it billed to both of its clients combined. If Channel One forwards the excess to Kartina – to reimburse it for its payments to the Firm – Kartina will enjoy a benefit that it specifically disclaimed when it agreed to fund its licensors' litigation.

effectuate the purposes of the EAJA, a claimant with a legally enforceable right to full indemnification of attorney fees from a solvent third party cannot be deemed to have incurred that expense for purposes of the EAJA, hence is not eligible for an award of fees under that Act[.]"); *S.E.C. v. Comserv corp.*, 908 F.2d 1407, 1414 (8th Cir. 1990) (denying EAJA fees to Johnson because "Comserv, not Johnson, was legally obligated to pay Johnson's attorneys' fees"). Although the Second Circuit has not addressed this issue, at least one court in this District has followed the logic of *Paisley* and *Comserv* by awarding the prevailing party the $53,834.84 in legal fees and expenses that he owed to his lawyers, but *not* the $30,000 that his employer had already paid on his behalf. *S.E.C. v. Cedric Kushner Promotions, Inc.*, 2006 WL 1423041, at *3 (S.D.N.Y. May 23, 2006).[9]

Plaintiff has not identified any legislative history specific to the FCA that would permit this Court to award the prevailing party fees and costs that have already been paid, on a non-recourse basis, by a non-party. Nor has plaintiff pointed to any public policy justification for such an award. Fee shifting statutes, broadly, serve two important goals: "equity," which includes "making [the] successful party whole," and "incentives," which includes making it economically feasible for competent counsel to represent deserving litigants "for whom cost may be a deterrent to vindicating their rights." Thomas D. Rowe, Jr., *The Legal Theory of Attorney Fee Shifting: A Critical Overview*, 1982 Duke L.J. 651, 652, 664 (1982) (internal quotation and citation omitted). As Judge Pooler noted in *In re Am. Exp. Merchants' Litig.*, 681 F.3d 139 (2d Cir. 2012), "fee-

---

[9] In *Cedric Kushner Promotions*, the prevailing party, Angel, was entitled under state law to indemnification by his employer against his legal expenses, but the employer was in financial distress and unable to honor its obligation beyond its initial payment of $30,000. 2006 WL 1423041, at *2. Under the terms of Angel's retainer agreement with his counsel, Angel remained liable for the outstanding balance. *Id*. at *3. Under these circumstances, the court concluded that – as to that outstanding balance – "Angel has incurred his attorneys' fees and expenses within the meaning of the EAJA." *Id*.

shifting provisions ensure[] that a damaged plaintiff [is] made whole[.]" *Id*. at 141 (concurring in denial of rehearing *en banc*); *see also Gucci Am., Inc. v. Rebecca Gold Enterprises, Inc.*, 802 F. Supp. 1048, 1051 (S.D.N.Y. 1992) ("One of the advantages of the fee-shifting section [in that case, § 35(a) of the Copyright Act] is to make plaintiffs whole"). Another "fundamental aim" of fee-shifting statutes "is to make it possible for those who cannot pay a lawyer for his time and effort to obtain competent counsel, this by providing lawyers with reasonable fees to be paid by the losing defendants." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987); *see also Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) ("The general purpose of fee-shifting statutes such as [42 U.S.C.] § 1988(b) is to permit plaintiffs with valid claims to attract effective legal representation and 'thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.'") (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)).

Neither of these goals would be served by granting fees to Channel One that have already been paid, on its behalf, by Kartina. As discussed above, such an award would make it more than "whole." Moreover, Channel One had no difficulty in attracting competent counsel (to the contrary: the Firm was responsible for "obtain[ing] authority" from Kartina's licensors to represent them at Kartina's expense, *see* Kartina Ag. at 1), and no apparent difficulty in paying its own legal bills once Kartina bowed out – "until OFAC sanctions." Pl. Mem. at 3. For this reason as well, I reject plaintiff's claim that it is entitled to a fee award larger than any sum it has paid or still owes its lawyers. *See Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989) (rejecting claim for an award of fees against an intervenor in a Title VII case because such an award "would further neither the general policy that wrongdoers make whole those whom they have injured nor Title VII's aim of deterring employers from engaging in discriminatory practices").

14

B.    **Lodestar Analysis**

Plaintiff has submitted contemporaneous time records covering legal services rendered from January 2018 through April 2023 (except for the period December 2019 through April 2020, for which there are no records). Dowd Decl. Exs. A-F. However, as explained above, the first payments made by Channel One (aggregating $4,590) were for services performed from June through November, 2019. *See* Spreadsheet at ECF p. 3. Thereafter, Channel One became directly responsible for all of the Firm's services rendered after May 1, 2020. Channel One. Ag. at 3. Since that date, the Firm has billed Channel One a total of $384,652 ($372,470 in fees for legal services and $12,182 in litigation costs). *See* Spreadsheet at ECF pp. 3-5. Thus, Channel One either has paid or now owes Dunnington $389,242 ($377,060 in fees for legal services and $12,182 in litigation costs).[10]

Additionally, at step three of the "waterfall" arrangement set forth in the Channel One Agreement, plaintiff will become responsible for services rendered prior to May 1, 2020, in the amount of $275,880, if and when the Firm collects sufficient funds to cover steps one and two of the waterfall. *See* Channel One Ag. at 4.[11] Accordingly, I limit my lodestar analysis to the fees (not expenses) that that Channel One incurred (has paid, now owes, or may owe in the future) in this action. That figure is $652,940 ($377,060 + 275,880), which I now analyze to determine whether it is "reasonable." *Millea*, 658 F.3d at 166.

---

[10] Because it is unclear whether Channel One's partial payments on the 2019 invoices were allocated to fees or expenses, I treat them as payments for fees.

[11] Because it is unclear what portion of this amount is properly allocated to fees for legal services and what portion is costs, I treat the entire $275,880 as fees.

### 1.      Hourly Rates

To determine a reasonable hourly rate, "courts generally look to the hourly rates employed in the District in comparable species of cases as a starting benchmark for the reasonable fee." *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 595 (S.D.N.Y. 2021). The fee applicant bears the burden of producing "satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Id*. at 596 (quoting *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). "The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted). However, the fact that a fee applicant was "actually charged the rates set forth in their attorneys' contemporaneous timesheets submitted with [the] fee application provides additional evidence that the rates are reasonable." *Pichardo v. C.R. Bard, Inc.*, 2015 WL 13784565, at *6 (S.D.N.Y. Jan. 26, 2015) (collecting cases).

In its application, plaintiff seeks fees for five Dunnington timekeepers:

| | |
|---|---|
| Raymond Dowd (Partner) | $650 per hour; |
| Samuel Blaustein (Partner) | $475 per hour; |
| Hardin Rowley (Senior Associate) | $375 per hour; |
| Akbar A. Khan (Associate) | $275 per hour; |
| Christopher Vidulich (Paralegal) | $225 per hour. |

Dowd Decl. ¶ 14. Attorney Dowd, who serves as lead counsel for plaintiff in this action, was admitted to practice in 1993 and since then has focused primarily on litigation, including litigation on behalf of international television broadcasters. Dowd Decl. ¶ 17. He has written "extensively" on litigation topics and is the author of a copyright litigation handbook. *Id*. ¶ 18. Attorney Blaustein was admitted to practice in 2010, joined Dunnington as an associate in October of 2010, and was promoted to partner as of January 1, 2017. *Id*. ¶ 20. Blaustein has worked on multiple intellectual

property matters and has been "recognized by Super Lawyers® as a 'Rising Star' and a 'Top Rated General Litigation Attorney in New York, NY.'" *Id.* ¶ 21. Attorney Rowley was admitted to practice in 2013 and worked an associate at the Firm from June 2016 to December 2022. *Id.* ¶ 22. Attorney Khan, whose credentials are not described (but who appeared before me in this action), was an associate at the firm. *Id.* ¶ 23.[12]

At least four additional timekeepers appear in the contemporaneous time records that plaintiff submitted in support of its application. *See* Dowd Decl. Ex. C at ECF p. 63 ($350 per hour for 19.25 hours recorded by associate Kamanta Kettle); *id.* at ECF p. 32 ($175 per hour for 4.5 hours recorded by legal assistant Tenzin T. Wangmo); *id.* at ECF p. 54 ($300 per hour for 4.8 hours recorded by associate Lily L. Belhadia); Dowd Decl. Ex. D at ECF p. 16 ($175 per hour for 0.2 hours recorded by legal assistant Connor A. Cauley). However. plaintiff does not provide any information concerning their credentials or experience. Consequently, I deduct $9,000, bringing plaintiff's maximum potential award to $643,940 ($652,940 – $9,000).

With regard to the timekeepers identified in the Dowd Declaration, defendants do not challenge Dunnington's hourly rates, which appear to be consistent with prevailing market rates charged by comparable legal professionals in this District. *See Barcroft Media, Ltd. v. FashioIn In Me Inc.*, 2018 WL 4565889, at *5 (S.D.N.Y. June 5, 2018) (collecting copyright and trademark infringement cases, all now at least five years old, awarding $425-$570 for partners at small to mid-sized law firms, and $200-$390 for associates), *report and recommendation adopted*, 2018 WL 4568727 (S.D.N.Y. July 25, 2018); *see also* Order at 7-8, *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM) (S.D.N.Y. June 13, 2019) (approving

---

[12] Kahn was not, however, an associate "from 2018 to October 2020," as represented. Dowd Decl. ¶ 23. Kahn began his work for the Firm as a paralegal, and was still billed as such as late as December 12, 2018. *See id.* Ex. B, at ECF p. 123.

Dunnington's hourly rates for work done in a similar lawsuit in 2016-17 as "consistent with the prevailing market rates charged by legal professionals of comparable experience and expertise in this district," including $500 per hour for attorney Dowd, $350 for attorney Blaustein, and $325 for attorney Rowley). Consequently, I do not recommend any deductions to the fee award in this case based on the Firm's hourly rates.

## 2. Hours Expended

At the second stage of the analysis, I must determine whether the number of hours for which fees are sought is reasonable. *Reilly v. Plot Commerce*, 2016 WL 6837895, at *12 (S.D.N.Y. Oct. 31, 2016). Time that is "excessive, redundant, or otherwise unnecessary" may be excluded from an attorney's fee award. *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)). Additionally, where "a plaintiff has achieved only partial or limited success," the lodestar as initially computed "may be an excessive amount," and should be reduced. *Kassim*, 415 F.3d at 253 (quoting *Hensley*, 461 U.S. at 440); *see also Green*, 361 F.3d at 98 (reducing the lodestar by twenty percent based on plaintiff's limited success after finding that plaintiff pursued "inflated claims . . . to the eve of trial").

The Second Circuit has emphasized that the degree of success obtained by the plaintiff is the "most critical" or "most important" factor in determining the appropriate fee award. *See, e.g.*, *Fisher v. SD Protection, Inc.*, 948 F. 3d 593, 606 (2d Cir. 2020) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (same); *Kassim*, 415 F.3d at 255 (quoting *Green*, 361 F.3d at 99). In many cases, the plaintiff's successful and unsuccessful claims are so interrelated, factually and legally, as to make apportionment inappropriate. *See Hensley*, 461 U.S. at 435. But where a plaintiff presents

"distinctly different claims for relief that are based on different facts and legal theories," *id.*, "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.*; *see also, e.g.*, *Ravina v. Columbia Univ.*, 2020 WL 1080780, at *12-13 (S.D.N.Y. Mar. 6, 2020) (reducing fee award by 35% where "Ravina's failed claims that Columbia discriminated and retaliated against her based on its own conduct were only marginally related to her successful retaliation claim based on Bekaert's conduct"); *Starkey v. Somers Cent. Sch. Dist.*, 2008 WL 5378123, at *4 (S.D.N.Y. Dec. 23, 2008) (Lynch, J.) (reducing fee award by 70% where plaintiff prevailed on a due process challenge with respect to a single incident involving her daughter, but lost multiple claims under the Individuals with Disabilities Education Act).

"*Hensley* warns that '[t]here is no precise rule or formula' for adjusting the lodestar to account for limited success." *Green*, 361 F.3d at 99 (quoting *Hensley*, 461 U.S. at 435). The district court must use its judgment, informed by its familiarity with discovery and other pretrial proceedings, to apply an appropriate percentage to the overall fee award in recognition of the partial success obtained by the plaintiff. *Kassim*, 415 F.3d at 255; *Green*, 361 F.3d at 100.

Here, while it is true that plaintiff ultimately prevailed on only one of the multiple causes of action it originally pleaded, defendant does not contend – and the Firm's timesheets do not suggest – that any substantial amount of time was devoted to Channel One's non-FCA claims during the period for which it was responsible for its own fees. *See Starkey*, 2008 WL 5378123, at *4 (in determining how much to discount a fee award for unsuccessful claims, the court should "look to the amount of effort invested in the respective unsuccessful and successful claims").

Defendant's argument has some force, however, with respect to the two FCA § 605(e)(4) claims that plaintiff pursued vigorously through trial, but lost.

Unlike its FCA § 605(a) claim, which turned on whether Russian TV was authorized to re-broadcast plaintiff's Programming (regardless of the technical means it used to do so), the § 605(e)(4) claims required plaintiff to prove that a specific STB imported by RTV, and a specific app developed by RTV, were "primarily of assistance in the unauthorized decryption of . . . direct-to-home satellite services," or were "intended" for any other activity "prohibited" by FCA § 605(a). 47 U.S.C. § 605(e)(4).[13] Discovery concerning the § 604(e)(4) claims was at times intensive, and concerned issues that were largely irrelevant to plaintiff's § 605(a) claim. Moreover, the statutory damages available for violations of § 604(e)(4) are significantly higher (on a per-violation basis) than those available for violations of § 605(a), and, in this case, would likely have been non-cumulative.[14] I therefore conclude that "the unsuccessful [§ 605(e)(4)] claims were ultimately quite distinct from the successful [§605(a)] claim, being based on different and broader facts, seeking more significant relief, and raising quite different legal issues. It follows that plaintiff should not be able to recover attorneys' fees for time spent pursuing these claims." *Starkey*, 2008 WL 5378123, at *3-4 (paragraph break omitted). However, I cannot conclude that the § 605(e)(4)

---

[13] *Compare* Pl. Mem. in Supp. of Mtn. for Summ. J. at 7 (arguing that defendants were liable under § 605(a) because they "re-transmitted [Channel One's satellite signal] without authorization by streaming it to paying customers,") *to id*. at 10-13 (arguing that defendants were liable under § 604(e)(4) because they imported STBs that were "preconfigured for consumers to access the Programming with a 'plug and play' menu," and developed an app that was "designed primarily to distribute unlawfully intercepted satellite communications").

[14] On its § 605(a) claim, plaintiff sought statutory damages of $1,000 to $10,000 for each of Russian TV's 1,964 customers, (for a total of $1.96 million to $19.6 million). Pl. Mem. in Supp. of Mtn. for Summ. J. at 8-9, 21. On its § 605(e)(4) claims, plaintiff sought statutory damages of $10,000 to $100,000 for each of the estimated 3,000 customized STBs that defendants imported (for a total of $30 million to $300 million), plus another $10,000 to $100,000 for each of the 200 estimated downloads of the RTV App by RTV customers (for a total of another $2 million to $20 million). *Id*. at 11-13, 21.

claims were the "core" of this case, *see id.*, and I recognize – as Judge Lynch did in *Starkey* – that all of plaintiff's claims were to some degree "mutually supporting," and that its § 605(e)(4) claims, although ultimately unsuccessful, may have "len[t] atmosphere and heft" to the remainder of its case. *Id.* Consequently, rather than apportion fees on a claim-by-claim basis, I recommend that plaintiff's fee award be discounted by a further 30%, so as to prevent plaintiff from imposing the cost of litigating its failed § 605(e)(4) claims on the parties that prevailed on those claims. This brings the total recommended fee award to $450,758 ($643,940 – $193,182).

### C.    Costs and Expenses

Finally, Channel One requests reimbursement for out-of-pocket expenses incurred by its counsel. Dunnington listed these expenses on its invoices, including computerized legal research costs, printing costs, mailing costs, process server fees, and transcription costs. *See, e.g.*, Dowd Decl. Ex. E, at ECF p. 20 (listing a total of $1,080.61 in expenses on its invoice dated December 9, 2021, including $3.10 for "Pacer service fees," $13.46 for "Federal Express," $19.00 for "printer copies," $86.58 for "Carole Ludwig," and a total of $958.47 for "Westlaw"). However, Channel One failed to comply with my express direction that it submit "admissible evidence documenting all expenses for which reimbursement is sought." *Russian TV II*, 2022 WL 17490873, at *9. There are no invoices, receipts, or other evidence in the record to substantiate these expenses. Moreover, although attorney Dowd attests in broad terms that all "charges referenced in Exhibit A-F have been incurred," Dowd. Decl. ¶ 11, he does not explain any of the individual expenses, nor show that they were reasonably required in connection with this action.

It is well-settled in our Circuit that a fee applicant "must submit adequate documentation supporting the requested . . . costs." *Fisher*, 948 F.3d at 600 (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Joint Stock Co. Channel*

*One Russia Worldwide v. Infomir LLC*, 2019 WL 11825219, at *8 (S.D.N.Y. June 13, 2019) ("An application for costs must be substantiated by the requesting party."); *Hernandez v. JRPAC Inc.*, 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017) ("[C]osts for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is ordinarily also sufficient.") (internal citation omitted).

Channel One is well aware of these rules, having been denied an award of expenses at least once for the same deficiencies discussed above. *See Infomir*, 2019 WL 11825219, at *8 (rejecting request for cost reimbursement because "the application for costs is not sufficiently substantiated"). Because plaintiff does not provide "extrinsic proof" of any of the listed expenses, and because the Dowd Declaration affirms neither "particular items" nor "certain amounts," I recommend that no award be made for expense reimbursement.

## IV.  CONCLUSION

For the reasons set forth above, I recommend, respectfully, that plaintiff's fee application be GRANTED, and that it be awarded $450,758 in fees, as set out in the margin,[15] but no costs.

Dated: New York, New York
January 31, 2024

_____
**BARBARA MOSES**
**United States Magistrate Judge**

---

[15]

| | |
|---|---:|
| Fees and Expenses Requested: | $1,072,370 |
| Fees and Expenses Incurred: | $665,122 |
| Less Unsupported Expenses: | (12,182) |
| Less Uncredentialed Timekeepers: | (9,000) |
| Subtotal: | 643,940 |
| Less 30%: | (193,182) |
| **Total:** | **$450,758** |

## <u>NOTICE OF PROCEDURE FOR FILING OF OBJECTIONS</u>
## <u>TO THIS REPORT AND RECOMMENDATION</u>

The parties shall have fourteen days from the service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Lorna G. Schofield at the Thurgood Marshall United States Courthouse 40 Foley Square, New York, New York 10007, and to the chambers of the undersigned Magistrate Judge. Any request for an extension of time to file objections must be directed to Judge Schofield. Failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. Nov. 27, 2018); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).